**Jesse ANDERSON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9510–CR–1128.

Supreme Court of Indiana.

June 19, 1997.

Belle T. Choate, Indianapolis, for Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Jesse Anderson was convicted of Murder[1] for the death of 21–month old Marie Carter. He was sentenced to sixty years.

## Facts

On the evening of June 10, 1994, defendant was at the home that he shared with his girlfriend, Marnie Stuller, while Stuller was working a night shift. Stuller's daughter, Marie Carter, was with defendant. At approximately 3:00 a.m. Marie woke up and began crying. Defendant contended that he went into Marie's bedroom, and in an effort to stop Marie's crying, struck her with his hand in the chest. Marie stopped crying, and rolled over. Defendant then returned to his bedroom. Defendant testified that at approximately 7:00 a.m., he went to check on Marie and found that she would not move. He then called 911 and the dispatcher instructed defendant on how to administer CPR, but Marie could not be revived. An autopsy revealed that Marie suffered blunt force injuries to the head, chest, abdomen, back, and extremities.

## Discussion

### I

Defendant claims that the trial court erred in admitting certain evidence, namely: (a) that defendant used marijuana on the evening of Marie's death before she went to bed; (b) that defendant hid drug paraphernalia after calling 911; and (c) evidence of prior physical injuries to Marie.

---

1. Ind.Code § 35–42–1–1(1993) which provides: "Murder.—A person who: (1) Knowingly or intentionally kills another human being...." The information in this case charged that defendant "did knowingly kill another human being." R. 23.

### A

Defendant objected to the admission of a statement he made to an officer after Marie's death in which defendant stated that he smoked marijuana on the night of Marie's death before she went to bed.

■ The State claims that defendant's marijuana use on the night of Marie's death was properly admitted because it was part of the *res gestae* of the charged crime, citing *Forehand v. State,* 479 N.E.2d 552, 554 (Ind. 1985): "evidence may be introduced which completes the story of the crime by proving its immediate context, even if this evidence also shows that the defendant committed other crimes during the course of the charged offense." This court has determined that the *res gestae* doctrine did not survive the adoption of the Indiana Rules of Evidence. *Swanson v. State,* 666 N.E.2d 397, 398 (Ind. 1996).[2]

To be admissible, evidence presented at trial must be relevant. Ind.Evidence Rule 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is not always admissible, however, as it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403. In addition, evidence of crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(b). It may be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

■ In a statement to police, defendant claimed that he struck the victim only once and that he did not believe it was hard enough to hurt her. His use of marijuana was relevant to assist the jury in evaluating and understanding defendant's claim in contrast to the evidence, to be discussed in parts II and III of this opinion, of blunt force injuries to Marie's head, chest, and abdomen, resulting in her death. The admission of the evidence of defendant's marijuana use on the night Marie died was not violative of Evid.R. 404(b).

■ As to the inquiry required by Evid.R. 403 into whether the probative value of the evidence of defendant's marijuana use is outweighed by the danger of unfair prejudice, we acknowledge the danger of unfair prejudice that might result in such circumstances from a jury's antipathy towards illegal drug use. However, a trial court's evidentiary rulings are presumptively correct, and defendant bears the burden on appeal of persuading us that the court erred in weighing prejudice and probative value under Evid.R. 403. *Cason v. State,* 672 N.E.2d 74, 75 (Ind.1996). Given the evidence of guilt in this case, to be discussed *infra,* we find it within the trial court's discretion to find that the danger of unfair prejudice did not outweigh the probative value of the evidence here.

■ Defendant also objected to the State introducing Stuller's statements that she noticed certain drug paraphernalia missing and that defendant had told her he had hid those items in a closet while on the phone with 911. In defendant's statement to police, he stated that there was not any marijuana in the house but that the police might find a "roach" if they searched his house. Later at trial, Stuller testified that when she got home from work the morning Marie died, she noticed that some drug paraphernalia was missing. She stated that defendant later told her that he had walked through the apartment and collected these items and hid them in a hall closet.

Defendant argues that any evidence that he disposed of drug paraphernalia was not admissible because it was not relevant and only went to show defendant's bad character. The State maintains it was admissible because it did not go to show defendant's bad character, but was presented to attack defendant's credibility with respect to his statements to the police. The State reasons that defendant's statements to police indicated that he was only a casual marijuana user, when in fact, the State claims, Stuller's statement that defendant hid quite a bit of drug

---

**2.** Our decision in *Swanson* was handed down after briefing on this case was completed.

paraphernalia proves that he was more than a casual user. The State claims this is important because it was used to show that other statements defendant made to the police were not truthful. This line of reasoning is tenuous at best. First, we do not see how defendant's statements to the police constitute a declaration by defendant that he was only a casual marijuana user and, second, even if that is so, we do not see how Stuller's statement that defendant hid drug paraphernalia proved that this statement was untrue. We do not agree with the State that these statements were offered to attack defendant's credibility with respect to his statements to the police. We think these statements that defendant was a drug user—casual or not—only go to show defendant was a "bad person." Evid.R. 404(b) excludes this type of evidence.

■ Although this evidence was not admissible, its admission must have effected the substantial rights of defendant to constitute reversible error. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995). Here we cannot conclude that defendant's substantial rights were affected. Because evidence of marijuana use was admissible, the fact that defendant had marijuana paraphernalia in the house added little to the picture the jury had of him. In light of this and in light of the other evidence presented by the State to show defendant knowingly killed Marie, to be discussed *infra*, we conclude that admission of this evidence did not result in reversible error.

### B

■ Defendant also contends that the State should not have been permitted to introduce evidence of ten specific injuries to Marie. Defendant contends that this evidence was admitted in violation of Evid.R. 404(b) which, as discussed *supra*, prohibits use of evidence of wrongs or acts to prove the character of a person to create an inference that the person acted in conformity with that character. Defendant contends admission of the evidence of Marie's injuries was particularly inappropriate because they were not connected to him.

The reference in the record to the ten injuries cited by defendant is a pre-trial motion, not evidence introduced at trial. Our own inspection of the record convinces us that, to the extent the State introduced evidence of Marie's injuries, it was for the purpose of establishing the cause of death, not proving defendant's character. Most of the evidence of injuries came from the testimony of two doctors, Dr. Merk and Dr. Pless, concerning the autopsy report with regard to Marie's cause of death. The autopsy revealed numerous injuries on Marie's body, most of which were very recent but few of which were somewhat older. Stuller also testified as to the existence and cause of the older injuries; and that except for a cut above her left eye, Marie had no visible injuries prior to Stuller leaving for work that evening. We find in general that this evidence was probative of the cause of Marie's death and in particular that the distinction between old and new injuries was probative of the exact cause of death. *Schoffstall v. State*, 488 N.E.2d 349 (Ind.Ct.App.1986) (autopsy photographs and testimony of doctor as to injuries, old and new, found on victim was admissible).

### II

■ Defendant next contends that the evidence presented by the State was insufficient to establish the requisite *mens rea* of the crime of Murder. A *mens rea* of either knowledge or intent is an essential element constituting the crime of Murder in Indiana. *Buie v. State*, 633 N.E.2d 250, 253 (Ind.1994); *Vance v. State*, 620 N.E.2d 687, 690 (Ind. 1993); *Abdul–Wadood v. State*, 521 N.E.2d 1299, 1300 (Ind.1988). Here defendant was charged with a knowing killing.

■ While "the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), it is not the function of this court to weigh evidence or assess the credibility of witnesses when reviewing a claim of insufficiency of the evidence. *Pilarski v. State*, 635

N.E.2d 166 (Ind.1994). If after considering reasonable inferences and evidence supporting the verdict we conclude that a reasonable trier of fact could find each element of the crime beyond a reasonable doubt, we will affirm the conviction. *Greenlee v. State,* 655 N.E.2d 488, 492 (Ind.1995).

In *Owens v. State,* 659 N.E.2d 466 (Ind. 1995), the defendant also challenged the sufficiency of the evidence to support the requisite *mens rea* of a knowing or intentional killing on grounds that he was too intoxicated to be aware of a high probability that his conduct would result in the victim's death. The evidence in that case showed that the defendant had brutally beaten the victim over an extended period of time, including slamming his head against a car. *Id.* at 470. We found sufficient evidence to support the element of a knowing killing in part because "from the severity of the beating . . ., the jury could have concluded beyond a reasonable doubt that [defendant] knowingly killed [the victim]." *Id.* at 473.

Here the State also introduced extensive evidence of the severity of Marie's injuries. Dr. Pless, a professor of pathology at the I.U. School of Medicine experienced in performing autopsies, testified for the State at trial regarding the injuries noted in the autopsy report of Marie. Dr. Pless testified that "there were blunt force injuries about the head, chest, abdomen, and the extremities, as well as the back. . . . The injuries to the chest consisted of bruises or contusions of the chest wall, as well as a rupture of the diaphragm . . . tears in the esophagus . . . as well as tears in the stomach so that there was actually gastric contents and blood in the chest cavity." R. 484–85. Also, Dr. Merk, a pediatrician, testified for the State regarding the injuries indicated in the autopsy report.

"[T]he child had sustained significant blunt trauma to the abdomen. The child had a ruptured diaphragm . . . [the esophagus] had been torn; as had the stomach, itself . . . it would take major trauma [to cause these injuries]." R. 513–14.

Marie was a 21–month old child. Defendant was a grown man. It would be reasonable for a jury to conclude that defendant was aware of a high probability that hitting a small child across the chest would result in her death. *See Gibson v. State,* 515 N.E.2d 492 (Ind.1987) (defendant's age and size compared to victim's age and size relevant in determining whether sufficient evidence to establish intent to kill existed). From the severity of Marie's injuries and the defendant's relative age and size, there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that defendant knowingly killed Marie and did not just intend to stop her from crying.

### III

Defendant claims that the trial court committed reversible error when it failed to instruct the jury on the lesser included offenses of (a) Voluntary Manslaughter,[3] (b) Involuntary Manslaughter,[4] and (c) Reckless Homicide.[5]

In *Wright v. State,* 658 N.E.2d 563 (Ind. 1995), we discussed the issue of whether a jury should be instructed on lesser included offenses. We set forth a three step inquiry for making such a determination:

First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged lesser included offense may be established "by proof of the

3. Ind.Code § 35–42–1–3 (1993), which reads: "Voluntary manslaughter.—(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.
 (b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section (1) of this chapter to voluntary manslaughter."

4. Ind.Code § 35–42–1–4 (1993), which reads: "Involuntary manslaughter.—A person who kills

another human being while committing or attempting to commit:

 . . . .
 (3) Battery;
commits involuntary manslaughter, a Class C felony."

5. Ind.Code § 35–42–1–5 (1993) which reads: "Reckless homicide.—A person who recklessly kills another human being commits reckless homicide, a Class C felony."

same material elements of less than all the material elements" defining the crime charged ... or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense ... then the alleged lesser included offense is *inherently* included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below ... Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged, and the trial court should proceed to step three below. If the alleged lesser included offense is neither *inherently* or *factually* included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense. Third, if a trial court has determined that an alleged lesser included offense is *either* inherently *or* factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Wright,* 658 N.E.2d at 567(citations omitted).

■■■ Because Reckless Homicide is an inherently included offense of Murder, a requested Reckless Homicide instruction should always be given in a case in which Murder has been charged if the evidence warrants it. *Id.* In fact, we have indicated in a slightly different context that when the question to instruct is a close one, it is prudent for a trial court to give the instruction. *Griffin v. State,* 644 N.E.2d 561, 563 (Ind. 1994). Here, however, we find no error.

The difference between Reckless Homicide and Murder is the *mens rea* element: Reckless Homicide requires a disregard of harm that might result from conduct, Ind.Code § 35–42–1–5; Murder as charged here requires the killing to be knowing, Ind.Code § 35–42–1–1. We think that the evidence here was so overwhelming that there was no serious evidentiary dispute as to whether defendant committed Reckless Homicide. A person acts knowingly if "when he [or she] engages in the conduct, he [or she] is aware of a high probability that he [or she] is doing so." Ind.Code § 35–41–2–2(b). Given the evidence set forth in part III of this opinion, we do not see any serious evidentiary dispute but that when defendant was hitting Marie, he was aware of the high probability that his conduct would result in her death. Under these circumstances, the jury could not conclude that the lesser offense was committed but not the greater. The trial court did not err in refusing to instruct the jury on the lesser included offenses of Reckless Homicide.

■■■ Involuntary Manslaughter[6] is not an inherently lesser included offense of Murder. *Wright,* 658 N.E.2d at 569. However, where, as here, the killing was accomplished by a touching, Involuntary Manslaughter is a factually included offense of Murder. Applying the same analysis, we find no serious evidentiary dispute but that

---

6. A person commits involuntary manslaughter by killing another human being while committing or attempting to commit a Class C felony, a Class D felony, or a Class A misdemeanor that inherently poses a risk of serous bodily injury or a battery.

Ind.Code § 35–42–1–4. Battery is defined as knowingly or intentionally touching another person in a rude, insolent or angry manner. Ind. Code § 35–42–2–1.

defendant killed Marie knowingly. The jury could not conclude that the lesser offense was committed but not the greater and the trial court did not err by refusing to give the instruction.

 Voluntary Manslaughter is an inherently included offense of Murder. *O'Conner v. State,* 272 Ind. 460, 466, 399 N.E.2d 364, 368 (1980); *Pinegar v. State,* 553 N.E.2d 525, 527 (Ind.Ct.App.1990), *trans. denied.* This is because Voluntary Manslaughter and Murder both require proof of identical elements: knowingly or intentionally killing another human being. *Palmer v. State,* 425 N.E.2d 640, 644 (Ind.1981). The offenses are distinct in that the Voluntary Manslaughter statute creates an affirmative defense of acting under sudden heat while the Murder statute does not.[7] *Compare* Ind.Code § 35–42–1–1 with Ind.Code § 35–42–1–3; *Palmer,* 425 N.E.2d at 644. Because the distinguishing feature between the offenses is the presence of sudden heat, defendant would be entitled to an instruction on Voluntary Manslaughter if there was sufficient evidence of sudden heat for the jury to conclude that Voluntary Manslaughter was committed but not Murder. *Pinegar,* 553 N.E.2d at 528. Defendant offered no evidence to show he acted in sudden heat and so was not entitled to an instruction on Voluntary Manslaughter.

## IV

 Defendant also contends that the State impermissibly referred to the defendant's failure to testify at trial.

During closing argument, the State made the following remarks which are the basis of defendant's objection:

> Now, we've heard about the CPR, that it explained the phenomenon of the skin separating from the musculature of Marie Carter's body. But we haven't heard an explanation of how the blows were inflicted that produced the lacerations in her body

so that the air could escape and separate the skin from the musculature.

(R. 679).

Defendant objected and moved for a mistrial, which the trial court denied.

We conclude that this statement does not constitute an impermissible reference to defendant's failure to testify. The statement "merely summarized the State's evidence and observed there was nothing to contradict that evidence . . . [and is not] a violation of appellant's constitutional right to remain silent. *See Hill v. State* (1988), Ind., 517 N.E.2d 784." *Adams v. State,* 575 N.E.2d 625, 628 (Ind.1991).

### Conclusion

We affirm defendant's conviction for Murder.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

---

7. Although Voluntary Manslaughter requires proof that the defendant knowingly or intentionally killed while acting under sudden heat, Ind. Code § 35–42–1–3, "the question of sudden heat is a mitigating factor and not an element of the offense of voluntary manslaughter." *Pinegar,*

553 N.E.2d at 527. "Sudden heat" requires a showing of "sufficient provocation to arouse the emotions of an ordinary person so as to obscure his reasonable powers." *Weaver v. State,* 583 N.E.2d 136, 142 (Ind.1991).