Michelle JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9706–CR–391.

Court of Appeals of Indiana.

Nov. 13, 1998.

---

Aaron E. Haith, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney Gen., James D. Dimitri, Deputy Attorney Gen., Indianapolis, for Appellee–Plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Michelle Engron Jones ("Jones") appeals her convictions, after a jury trial, of Murder[1] and Neglect of a Dependent, a class B felony.[2] We affirm.

### Issues

Jones raises several issues for our review which we restate as follows:

I. Whether sufficient evidence of corpus delicti exists to justify admission of Jones' confessions into evidence.

II. Whether the evidence is sufficient to sustain Jones' convictions of Murder and Neglect of a Dependent.

III. Whether the trial court erred in permitting the State to dismiss previous charges of Neglect of a Dependent and refile new charges of Murder and Neglect of a Dependent.

### Facts

The facts most favorable to the judgment indicate that on November 11, 1987, fifteen-year-old Jones gave birth to a son, Brandon. (R. 611, 1901, 1903). Brandon suffered from gynatictropin independent precocious puber-ty, a disorder which accelerated the child's physical development. (R. 1876, 1877). Jones' boyfriend, Kevin L. Sims ("Sims"), admitted paternity the year after Brandon's birth. (R.1905, 1907). The trial court awarded Jones custody of Brandon, granted Sims reasonable visitation rights, and ordered Sims to pay child support. (R.1907). When Brandon was approximately seven months old, Jones was removed from her home and placed with the Indianapolis Children's Bureau. (R. 615, 1908, 1909). Thereafter, Sims and his mother, Arlene Blevins ("Blevins"), assumed care of Brandon. (R.1908, 1936). Brandon was returned to Jones when he was three years old. (R.1910, 1936–37). Beginning in May, 1992, Jones and Brandon resided in an apartment which Jones leased from Janet K. Norris ("Norris"). (R. 2231).

In July, 1992, Jones accompanied her friend, Deborah Asante ("Asante"), to a weekend theater network conference in Detroit. (R.2027, 2028). During the trip, Jones informed Asante that a babysitter was caring for four-year-old Brandon. (R.2029). After the conference, Asante and several other friends noticed that they no longer saw Brandon. In response to questioning regarding Brandon's whereabouts, Jones informed friends that he was living either with Sims or with Blevins. (R.2033, 2049). Jones' upstairs neighbor, who also noticed Brandon's absence, observed Jones washing the inside and outside of her car frequently. (R. 2282, 2283).

At some point during the mid-summer of 1992, apartment manager Norris was walking by Jones' residence when she noticed hundreds of flies covering the inside front bedroom window of Jones' apartment. (R. 2249, 2250, 2252). Norris entered the apartment to investigate. (R. 2251). In the front bedroom, which appeared to be a child's room, Norris noticed a "very strong urine smell." (R. 2253, 2254). Norris questioned Jones, who responded that Brandon had been wetting the bed and that she would take care of the situation. (R. 2256).

---

**1.** Ind.Code § 35–42–1–1.

**2.** Ind.Code § 35–46–1–4.

On January 1, 1993, Jones vacated her apartment. (R. 2267). Norris, who conducted the move-out inspection, observed that although the apartment was generally clean, there was a "brown stain all over the floor" of Brandon's bedroom. (R. 2272). Jones thereafter began living with her friend Mahalia Aamir ("Aamir"). (R.2048).

In December, 1993, after repeated unsuccessful attempts to establish contact with Brandon, Sims and Blevins contacted Aamir for information. (R.2051). Aamir confronted Jones, who confessed to Aamir that when she attended the theater conference during the summer of 1992, she left Brandon alone in her apartment. (R.2052). According to Jones, when she returned from the trip, she discovered Brandon dead in his bedroom. (R.2053). Jones then wrapped Brandon's body in a blanket, placed it in her car, and drove to a wooded area, where she placed the body. (R.2053, 2054). Jones made a similar confession to Asante, but additionally stated that she had placed Brandon's body in a box and attempted to bury it. (R.2037).

At the urging of Aamir and Asante, Jones took a leave of absence from work and checked into a mental health center in January, 1994. (R.2038, 2054, 2082). During her stay at the center, Jones confessed to a crisis clinician counselor and a police officer that she had left Brandon alone for several days and discovered his dead body upon her return. (R.2083–86, 2303–05). Based on the information Jones provided, police made repeated attempts to locate Brandon's body. Those attempts were unsuccessful. (R. 2340, 2341).

Jones returned to work in September, 1994, and changed her health insurance from dependent coverage to single coverage. (R. 2111, 2113). Jones additionally removed Brandon as beneficiary from her life insurance policy. (R. 2112, 2113).

In November, 1995, Jones confessed to her friend Clarissa Dunlap ("Dunlap") that she had beaten Brandon, left him alone in his bedroom, and returned several days later to find him dead. (R. 2149, 2150, 2151). When Dunlap asked whether Jones had beaten Brandon to death, Jones responded, "I guess so." (R. 2156). Jones also told Dunlap she

had misled police regarding the location of Brandon's body because she was scared. (R. 2175).

On October 22, 1996, the State charged Jones by information with Murder and Neglect of a Dependent. (R. 38, 66). After a jury trial, she was convicted as charged. The trial court imposed a fifty-year sentence for Murder and a three-year sentence for Neglect of a Dependent, and ordered that the sentences be served concurrently. This appeal ensued.

## Discussion and Decision

### I. Corpus Delicti

Jones contends the trial court erred in admitting her various confessions into evidence. According to Jones, the State produced insufficient evidence of corpus delicti to justify admission of the statements. In support of this contention, Jones argues that the evidence apart from her confessions does not support an inference that she committed either Murder or Neglect of a Dependent, but indicates merely that "Brandon is missing or has been placed somewhere by Jones." (Appellant's brief at 18–19).

To support the introduction of a defendant's confession into evidence, the corpus delicti of the crime must be established by independent evidence of 1) the occurrence of the specific kind of injury and 2) someone's criminal act as the cause of the injury. *Stevens v. State*, 691 N.E.2d 412, 424–25 (Ind.1997) (quoting *Willoughby v. State*, 552 N.E.2d 462, 466 (Ind.1990)). Each element of the crime need not be shown beyond a reasonable doubt; rather, the evidence need only provide an inference that a crime was committed. *Stevens*, 691 N.E.2d at 425; *Weida v. State*, 693 N.E.2d 598, 600 (Ind.Ct. App.1998), *trans. denied*. The corpus delicti may be established solely by circumstantial evidence. *Smith v. State*, 689 N.E.2d 1238, 1246 n. 10 (Ind.1997); *Campbell v. State*, 500 N.E.2d 174, 180 (Ind.1986). Further, the State is not required to prove the corpus delicti before the confession is admitted, provided the totality of independent evidence presented at trial establishes it. *Willoughby*, 552 N.E.2d at 467. Once properly admitted,

a confession is direct evidence of guilt of the criminal activity admitted. *Id.*

■ The evidence at trial showed that Brandon was four years old during the summer of 1992. After Jones returned from a weekend conference in Detroit, neither family nor friends ever saw Brandon again. Jones lied to her friends regarding his whereabouts, informing them that Brandon was living with Sims or Blevins. During this time, Jones also impeded Sims' and Blevins' efforts to see or visit with Brandon. Specifically, Blevins testified that throughout 1992 and 1993, she left messages with Jones "[t]wo and three times a week" attempting to arrange visitation with Brandon, but that Jones never returned her phone calls. (R.1961). Apartment manager Norris testified that sometime during the summer of 1992, she entered Jones' apartment after noticing flies inside the residence. According to Norris, although the apartment generally appeared clean, hundreds of flies were located on the window of what appeared to be a child's room, and the room smelled strongly of urine. State forensic expert John Brooks testified that decaying organic matter, such as flesh, blood, or garbage typically attracts flies in the volume observed at Jones' apartment. Jones' neighbor noticed that during the summer of 1992, she stopped seeing Brandon and began observing Jones repeatedly washing the inside and outside of her car. Finally, there was no record that Jones ever enrolled Brandon in school or filed a missing persons report with police. Rather, after an extended leave of absence from work, Jones removed Brandon from all insurance coverage.

■ The production of the victim's body is not required in a murder prosecution if circumstantial evidence shows that death did occur. *Campbell,* 500 N.E.2d at 179. In this case, the evidence apart from Jones' confessions, although circumstantial, gives rise to a reasonable inference that Brandon is dead and that a criminal act was the cause of his death. Accordingly, the surrounding circumstances provide a sufficient inference of criminal agency to satisfy the corpus delicti rule. *See Grey v. State,* 273 Ind. 439, 404 N.E.2d 1348, 1351 (1980) (stating that although circumstances do not exclude hypothesis of noncriminal cause for injuries, corpus delicti was established by circumstances which are consistent with and give rise to reasonable inference that crime occurred).[3]

## II. Sufficiency
### Standard of Review

■ Our standard of review for the sufficiency of evidence is well-settled. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Gant v. State,* 694 N.E.2d 1125, 1127 (Ind.1998). If substantial evidence of probative value exists to establish every material element of an offense beyond a reasonable doubt, we will affirm. *Sides v. State,* 693 N.E.2d 1310, 1313 (Ind.1998). It is the function of the factfinder to resolve conflicts in the testimony and to determine the weight of the evidence and the credibility of the witnesses. *McLean v. State,* 638 N.E.2d 1344, 1348 (Ind.Ct.App. 1994).

### Murder

Jones contends the evidence is insufficient to sustain her conviction for Murder. In support of this contention, Jones claims that the State failed to demonstrate beyond a reasonable doubt that Brandon was dead, instead proving only that he "could not be found." (Appellant's Brief at 22). Further, Jones contends, the State failed to demonstrate that she possessed the requisite intent to commit Murder. Finally, Jones argues, the only evidence pointing to her commission of the offense was the account of Clarissa Dunlap, whose testimony was of questionable veracity for the following reasons: 1) Dunlap did not provide a detailed account of the

---

**3.** Jones also contends the trial court's finding that sufficient evidence of corpus delicti existed, coupled with Final Instruction No. 13, impermissibly shifted to Jones an affirmative duty to either produce Brandon or demonstrate he was alive. The foregoing instruction read as follows: "Under Indiana law, a parent has an affirmative duty to care for and protect her child." (R. 425). The instruction as given was a correct statement of the law. *See Mallory v. State,* 563 N.E.2d 640, 644 (Ind.Ct.App.1990), *trans. denied.* Thus, we find no error.

offense; 2) Dunlap's testimony was motivated by jealousy and a desire for retaliation against Jones; and 3) Dunlap's unorthodox religious practices "run counter to human experience" and render her testimony incredibly dubious. (Appellant's Brief at 23).

■ In order to convict Jones of Murder, the State had the burden of demonstrating that Jones "did knowingly kill another human being, namely: BRANDON SIMS, by striking at and against the person of BRANDON SIMS, thereby inflicting mortal injuries upon BRANDON SIMS, causing BRANDON SIMS to die." (R. 66); see IND.CODE § 35–42–1–1. In this case, as we have already stated, ample circumstantial evidence exists to show that Brandon is dead. As for Jones' argument that the State failed to establish the requisite intent, we observe that in this case, a mens rea of knowledge was an essential element of the Murder charge. See Anderson v. State, 681 N.E.2d 703, 707 (Ind. 1997). A person engages in conduct "knowingly" if, when she engages in the conduct, she is aware of a high probability that she is doing so. IND.CODE § 35–41–2–2(b). Knowledge may be proved by circumstantial evidence and inferred from the facts of each case. Roach v. State, 695 N.E.2d 934, 941 (Ind.1998) (quoting Heavrin v. State, 675 N.E.2d 1075, 1079 (Ind.1996)).

Here, the jury had before it the testimony of Blevins, who stated that when she discussed Brandon's physical disorder with Jones, Jones commented that "she did not want to raise a freak." (R.1947). Further, Dunlap testified that in a November, 1995 conversation with Jones, she learned that Jones had beaten four-year-old Brandon and left him alone for several days. Jones additionally confessed to Dunlap that she "guess[ed]" she had beaten Brandon to death. (R. 2156). When Jones returned to discover Brandon dead, she wrapped him up, drove to a wooded area, and disposed of the body. The jury could reasonably conclude that Jones was aware of a high probability that Brandon's death would result from her act of beating him. See Powers v. State, 696 N.E.2d 865, 870 (Ind.1998) (stating that reasonable jury could conclude defendant was aware of a high probability that beating in-

fant across face and head and repeatedly dropping him on his head would result in his death); Anderson, 681 N.E.2d at 708 (jury could reasonably conclude that defendant was aware of high probability that hitting small child across the chest would result in child's death); Gibson v. State, 515 N.E.2d 492, 496–97 (Ind.1987) (defendant's age and size compared to victim's age and size relevant in determining whether sufficient evidence to establish intent to kill existed). Jones' statement that "she did not want to raise a freak," as well as her failure to seek medical assistance and her disposal of the victim's body, also provide evidence of motive. See Kincaid v. State, 265 Ind. 345, 354 N.E.2d 199, 204 (Ind.1976), cert. denied, 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365 (1977). Accordingly, sufficient evidence exists from which the jury could conclude that Jones possessed the requisite intent to commit Murder.

Jones also argues the testimony of Clarissa Dunlap was of questionable probative value and thus should be disregarded. The record indicates that during trial, Dunlap testified that she was a member of the Santeria Efa Yoruba religion and that, at Jones' request, she had performed rituals "intended to harm or confuse the people involved in the case." (R. 2178). During cross-examination, Jones attempted to show that Dunlap's testimony was motivated by her jealousy of Jones, and that Dunlap had contacted authorities with Jones' confession only after Jones reported to police that Dunlap had burglarized her home.

■ It is true, as Jones contends, that we will infringe upon the jury's determination of witness credibility when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Timberlake v. State, 690 N.E.2d 243, 252 (Ind.1997) (quoting Tillman v. State, 642 N.E.2d 221, 223 (Ind. 1994)). However, an appellate court takes this step only in situations where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt. Timberlake, 690 at 252 (quoting Till-

*man,* 642 N.E.2d at 223). Here, Dunlap described the conversation in which Jones confessed to beating Brandon and leaving him unsupervised for several days. Portions of her testimony were corroborated by other circumstantial evidence presented during the State's case-in-chief. Dunlap's testimony was not inherently contradictory, nor was there any evidence of coercion. Further, it was the jury's responsibility to judge witness credibility and to weigh and resolve conflicts in the evidence. *See Lott v. State,* 690 N.E.2d 204, 208 (Ind.1997). Jones' contention that Dunlap's testimony should be disregarded amounts to an invitation for this court to reweigh the evidence. We decline. The evidence is sufficient to sustain Jones' conviction for Murder.

### Neglect of a Dependent

Jones contends the evidence is insufficient to support her conviction for Neglect of a Dependent as a class B felony. Specifically, Jones argues that the State failed to prove beyond a reasonable doubt that she knowingly abandoned Brandon and that such abandonment resulted in his death.

 We first observe that although the State charged Jones with Neglect as a class B felony due to the existence of serious bodily injury, the trial court rightfully entered judgment of conviction and imposed a three-year sentence for Neglect as a class D felony. The trial court did so because the death of the victim was charged as an element of both Murder and Neglect as a class B felony. (R. 679–81, 2511–12). As the court recognized, where there is a killing of one human being, only one sentence may be imposed for that killing. *Strong v. State,* 538 N.E.2d 924, 929 (Ind.1989) (vacating conviction and sentence for Neglect causing serious bodily injury due to defendant's conviction for Murder); *see also Kellogg v. State,* 636 N.E.2d 1262, 1267 (Ind.Ct.App.1994) ("[o]ur courts have previously vacated a conviction for neglect of a dependent on double jeopardy grounds where the state relied upon the same act by the defendant to support both the neglect conviction and a conviction for another offense."). Consequently, in view of the trial court's reduction of the Neglect

charge, we examine whether the evidence is sufficient to sustain Jones' conviction of Neglect as a class D felony.

 In this case, the Neglect of a Dependent information charged in relevant part that Jones "did knowingly abandon BRANDON SIMS." (R. 66); *see* IND.CODE § 35–46–1–4(a)(2). During trial, the State presented the testimony of Aamir, Asante, crisis clinician counselor Toni Goffredo, and Officer Michael Crooke. Each testified that Jones confessed to leaving four-year-old Brandon in her apartment for several days and returning to discover him dead. The jury could reasonably infer from the foregoing testimony that Jones knowingly abandoned the victim. Accordingly, the evidence is sufficient to sustain Jones' conviction for Neglect of a Dependent as a class D felony.

### III. Dismissal and Refiling of Charges

Jones contends the trial court erred in permitting the State to dismiss two counts of Neglect of a Dependent and subsequently allowing the State to refile charges of Murder and Neglect of a Dependent.

The record indicates that on September 7, 1995, Jones was charged with two counts of Neglect of a Dependent as class B felonies. One year later, Dunlap placed an anonymous telephone call to the prosecutor's office and informed a deputy prosecutor that Jones had admitted to beating Brandon before leaving him alone for several days. The State eventually located Dunlap and obtained her statement on October 7, 1996. Thereafter, on October 22, 1996, the State moved to dismiss the pending Neglect of a Dependent charges. Over Jones' objection, the trial court dismissed the charges and permitted the State to refile one Neglect of a Dependent charge together with a charge of Murder. The court also denied Jones' motion for a continuance. According to Jones, the trial court erred in so doing because the new information was in effect a substantive amendment of the original information. Further, she claims, the addition of an entirely new charge placed her in the untenable position of having to prepare a Murder defense with only three and one-half weeks notice.

Indiana Code section 35–34–1–13 provides as follows:

(a) Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information. The motion may be made at any time before sentencing and may be made on the record or in writing. The motion shall state the reason for the dismissal.

(b) In any case where an order sustaining a motion to dismiss would otherwise constitute a bar to further prosecution of the crime charged, unless the defendant objects to dismissal, the granting of the motion does not bar a subsequent trial of the defendant on the offense charged.

A trial court has no discretion to deny a prosecutor's motion to dismiss. *Joyner v. State,* 678 N.E.2d 386, 394 (Ind.1997). Further, the dismissal of an information under IND.CODE § 35–34–1–13 does not of itself bar a subsequent trial of the defendant for the same offense. *Davenport v. State,* 689 N.E.2d 1226, 1229 (Ind.1997), *reh'g granted in part,* 696 N.E.2d 870 (Ind.1998). Rather, once an information has been dismissed by the State under IND.CODE § 35–34–1–13, the State may refile for the same offense so long as jeopardy has not already attached. *Davenport,* 689 N.E.2d at 1229. However, the State's power to dismiss and refile may not be used to evade the defendant's speedy trial rights; nor may the State refile if doing so will prejudice the defendant's substantial rights. *Id.; Joyner,* 678 N.E.2d at 394.

In this case, contrary to Jones' contention, the second filing was not an amendment to the first information; rather, the State dismissed the initial charges and refiled one count of Neglect of a Dependent together with a new count of Murder. *See Willoughby v. State,* 660 N.E.2d 570, 577 (Ind.1996) (holding that State's action in dismissing information and refiling identical murder charge together with amended conspiracy charge did not amount to amendment of first information). Here, jeopardy had not attached at the time the State dismissed two counts of Neglect of a Dependent and refiled one Neglect count. Nor were Jones' substantial rights prejudiced by the foregoing dismissal and refiling. Finally, the dismissal

and refiling were not used to evade Jones' speedy trial rights. Thus, we find no error on this issue.

As for Jones' contention that the addition of the Murder count was prejudicial, our supreme court addressed a similar issue in *Davenport,* 689 N.E.2d 1226. In that case, the State charged the defendant with a single count of murder. Four days prior to trial, the State moved to amend the information to add charges of felony murder, attempted robbery, and auto theft. *Id.* at 1229. The motion was denied. Thereafter, the State dismissed the murder charge and filed a new information containing all four charges. The State also secured transfer of the case to a different criminal division. *Id.* Our supreme court reversed the defendant's convictions for the three additional charges. In so doing, the court reasoned that the State's use of its inherent power to dismiss the case, refile the same offense, and add three new offenses on the eve of trial crossed over the boundary of fair play, prejudicing the defendant's substantial rights. *Id.* at 1230. The court additionally noted that although it is not entirely clear when a defendant's substantial rights are prejudiced by the State's dismissal and refiling of charges, it is relatively clear which situations do not necessarily prejudice a defendant's substantial rights. *Id.* at 1229. Those situations include the following: 1) where the State dismisses a charge because it is not ready to prosecute and then refiles an information for the same offense; 2) where the State dismisses an information in order to avoid an adverse evidentiary ruling and then refiles an information for the same offense; and 3) where the State dismisses a charge and refiles an amended information charging the same offense. *Id.* "The defendant's substantial rights are not prejudiced in these situations primarily because the defendant can receive a fair trial on the same facts and employ the same defense in the second trial as in the first." *Id.*

In this case, several weeks before trial, the State dismissed two pending counts of Neglect of a Dependent and refiled one count, together with an entirely new count of Murder. Unlike the defendant who was forced to "discard his prior preparation for trial and

begin anew on a trial with different charges, strategies, and defenses," *Davenport,* 696 N.E.2d at 871 (on rehearing), Jones employed substantially the same theories of defense on the Murder charge as she did for trial on the Neglect charge. The facts and relevant witnesses underlying the Murder charge were substantially similar to those involved in the Neglect charge. There was no showing that the State inappropriately wielded its inherent powers of dismissal and refiling, as was the case in *Davenport.* Additionally, the record reflects that during a pre-trial hearing on October 24, 1996, as well as during trial, Jones conducted vigorous cross-examination of Dunlap, questioning her motive for testifying, her potential bias against Jones, and her religious practices. We cannot say Jones' substantial rights were prejudiced by the State's refiling of a Neglect charge and its addition of a Murder charge three and one-half weeks before trial.[4]

 Further, it is within the trial court's discretion whether to grant or deny a motion for continuance, and we will not reverse its decision absent a clear showing that the court abused its discretion. *Strowmatt v. State,* 686 N.E.2d 154, 158 (Ind.Ct.App.1997). Continuances to allow more time for preparation are not favored and are granted only by showing good cause and in the furtherance of justice. *Id.; Ridley v. State,* 690 N.E.2d 177, 181 (Ind.1997). In addition, a specific showing is required as to how the additional time requested would have aided counsel. *Ridley,* 690 N.E.2d at 182. In this case, Jones has not asserted how additional time would have aided in her defense or how she was prejudiced by the court's denial of her motion for continuance. The trial court was in the best position to evaluate the fairness of the pro-

ceedings, and we cannot conclude the court's denial of Jones' motion for a continuance was an abuse of discretion. *See id.*[5]

Affirmed.

BAKER and DARDEN, JJ., concur.

---

4. We observe that in its opinion on rehearing, the *Davenport* court commented that in all its cited cases where the State was permitted to dismiss and refile charges, the State refiled the same offense, rather than refiling the same offense plus new offenses. *Davenport,* 696 N.E.2d at 871 n. 2. Although in this case the Murder charge was an entirely new offense, its addition did not substantially alter Jones' existing theories of defense. Thus, as earlier stated, Jones was not substantially prejudiced by the State's addition of the Murder charge.

5. Jones also contends that the jury's verdicts of guilty for both Murder and Neglect of a Dependent as a class B felony are rationally and logically inconsistent, requiring a finding of two instrumentalities of death. However, as we have already observed, here the trial court entered judgment of conviction for Neglect as a class D felony because the victim's death was charged as an element of both offenses. Thus, the trial court's reduction of the Neglect charge to a class D felony has alleviated Jones' concern that her convictions are inconsistent.