**Christopher LEWIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49S00–9910–CR–611.

Supreme Court of Indiana.

Dec. 22, 2000.

Rehearing Denied March 5, 2001.

Robert W. Hammerle, Joseph M. Cleary, Hammerle Foster Allen & Long–Sharp, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Kostas A. Poulakidas, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

Following a bench trial, nineteen-year-old Christopher Lewis was convicted of murder for the beating death of his twenty-year-old girlfriend Stacie Harris. In this direct appeal Lewis raises one issue for our review: is the evidence sufficient to support his conviction?

We affirm the trial court.

### Facts

Lewis and Harris met in middle school and dated off and on since their sophomore year of high school. On the evening of May 1, 1998, Lewis and Harris got into an argument about Harris' alleged infidelity. The facts most favorable to the verdict show that Lewis shoved Harris into a wall, strangled her, slammed her onto the ground, swung her into furniture and a wall, and hit and kicked her. After the fight, both Lewis and Harris fell asleep.

Because Harris was unresponsive the following morning, Lewis and Harris' friend took her to the emergency room. Tests revealed that Harris was clinically brain dead. After consultation with Harris' family, the doctors removed her from the ventilator on May 3. Harris died minutes later.

After a bench trial, Lewis was convicted of murder and sentenced to fifty-five years imprisonment. This direct appeal fol-

lowed. Additional facts are set forth below where relevant.

### Discussion

■ Lewis admits that he killed Harris but asserts that the evidence was insufficient to prove that it was a knowing killing. The standard for reviewing sufficiency of the evidence claims is well-settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Jackson v. State*, 728 N.E.2d 147, 153 (Ind.2000). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

■ The State charged Lewis with murder for the knowing killing of Harris. Under Indiana Code § 35–41–2–2(b), "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." To kill knowingly is to engage in conduct with an awareness that the conduct has a high probability of resulting in death. *Lyttle v. State*, 709 N.E.2d 1, 3 (Ind.1999).

In *Anderson v. State*, 681 N.E.2d 703 (Ind.1997), the defendant alleged that the evidence was insufficient to support the knowing killing of his girlfriend's twenty-one-month-old child on grounds that he only struck the child in the chest to stop her from crying. The evidence in that case showed that the child sustained blunt force injuries all over her body, a ruptured diaphragm, and a torn esophagus and stomach. We found sufficient evidence to support the element of a knowing killing in part because "[f]rom the severity of [the child's] injuries …, there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that [the] defendant knowingly killed [the child]…." *Id.* at 708. *See also Owens v. State*, 659 N.E.2d 466, 473 (Ind.1995) (finding sufficient evidence to support the element of a knowing killing in part because "from the severity of the beating …, the jury could have concluded beyond a reasonable doubt that [the defendant] knowingly killed [the victim]….").

■ Here the State introduced extensive evidence of the severity of Harris' injuries. Dr. Dean Hawley, the forensic pathologist who performed Harris' autopsy, testified at trial that Harris' body contained blunt force injuries that "completely cover[ed] her body from head to toe, front and back." R. at 314. The blunt force impacts to Harris' head caused her brain to swell and herniate through the base of her skull, resulting in brain death. R. at 314. Dr. Hawley testified that he could not pinpoint what specific head injury caused Harris' brain death because "[t]here are so many impacts of the head, I don't know what to associate with the brain damage." R. at 343. Harris also sustained blunt force injuries to her neck that included the pattern of a ligature that had been wrapped around her neck and small bruises resembling fingernail marks. R. at 314. There were internal injuries to Harris' larynx, indicating manual and ligature strangulation. R. at 314. Harris also had bruises on her body that were "[t]oo many to count," including bruises in the shape of finger marks and shoeprints. R. at 314, 334, 346–47. When asked if he could tally up the various injuries to Harris, Dr. Hawley responded, "I can't. They're just everywhere." R. at 333. Dr. Hawley concluded that Harris died of "[m]ultiple blunt force injuries and manual and ligature strangulation." R. at 304.

Dr. Kristi George, the neurologist who treated Harris, testified at trial that the entire left hemisphere and front portion of the right hemisphere of Harris' brain were completely destroyed. R. at 253–54. Dr. George also testified that there was blood in Harris' eyes, urine, and brain. R. at 253, 254, 257. Dr. George concluded that Harris died of blunt force trauma and lack of oxygen, most likely from strangulation. R. at 258–269, 298.

From the severity of Harris' injuries, there was sufficient evidence from which the trier of fact could have concluded beyond a reasonable doubt that Lewis knowingly killed Harris.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.