## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 23 2017, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jabril Scruggs, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 23, 2017 <br><br> Court of Appeals Case No. 49A04-1609-CR-2024 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt M. Eisgruber, Judge <br><br> Trial Court Cause No. 49G01-1403-FB-14175 |

**Bradford, Judge.**

# Case Summary

[1] On March 18, 2014, Appellant-Defendant Jabril Scruggs asked a fellow Lawrence Central High School student, K.H., if she would go with him and hold the door open for him while he looked for his mother outside of the school. While they were in an empty hallway, Scruggs forced K.H. to have intercourse without her consent and despite her pleas for him to stop. K.H. subsequently reported the rape to the school's dean who, in turn, alerted police. Appellee-Plaintiff the State charged Scruggs with rape as a Class B felony and two counts of criminal confinement as class D felonies. The jury in the first trial acquitted Scruggs of one count of criminal confinement but failed to reach unanimous verdicts on the other two charges. A second jury trial commenced on June 27, 2016, after which the jury found him guilty of both charges. The trial court subsequently merged the criminal confinement charge into the rape charge and sentenced Scruggs to ten years of incarceration with four years suspended to probation and ten years on the sex offender registry.

[2] Scruggs challenges the sufficiency of the evidence and the exclusion of a defense witness. Specifically, Scruggs raises the following restated issues: whether the evidence was sufficient to prove that Scruggs had intercourse with K.H. without her consent and whether the trial court properly excluded a defense witness and denied a continuance. Due to the ample evidence that the intercourse was not consensual and the facts that the potential testimony from the belatedly disclosed defense witness was riddled with inadmissible hearsay and the witness would not have been available to the State prior to his testifying, we affirm.

# Facts and Procedural History

[3] On March 18, 2014, K.H., a junior at Lawrence Central High School, in Marion County, Indiana, was feeling ill and had her head down on a table during the first period of lunch at school. Scruggs, a fellow student, sat down next to her and kept taking her headphones out of her ears. K.H. repeatedly told Scruggs that she was not feeling well. Scuggs then asked K.H. if she would hold a door open for him so he could check to see if his mother was there to pick him up without getting locked out. K.H. agreed to help Scruggs with the door.

[4] K.H. and Scruggs walked around the school while Scruggs checked to see if his mother was waiting by three or four different doors. When they were outside of the dean's office, Scruggs tried to kiss K.H. K.H. moved away from his advances because she did not want to kiss him. They continued to walk around while Scruggs ostensibly checked the various doors for his mother.

[5] After checking the fourth door, Scruggs put his hands on K.H.'s back and began pushing her to walk forward. He directed her towards a secluded area by the girls' and boys' locker room. "He started getting a little rough, like grabbing [her] arm, twisting [her] arm back and stuff, and like putting his hand on [her] shoulder and like bending [her] over." Tr. III p. 16. K.H. told Scruggs "no" and "stop" several times. Tr. III pp. 17-18. While holding her arm and using his weight to keep her bent over, Scruggs pulled down K.H.'s pants. K.H. started crying and pleading for Scruggs to stop, but he pulled his pants down

and forced his penis inside of her vagina. Scruggs was very forceful and rough as he struggled to insert his penis inside of K.H. K.H. continued to plead with him to stop; however, Scruggs ignored her pleas and did not stop until he had ejaculated on her back.

[6] Scruggs walked away after he pulled up his pants, but then returned to get K.H. K.H. was still crying and trying to fix her clothes when Scruggs returned. After she was done pulling her pants up, Scruggs put his arm around her and led her into the main gym. K.H. continued to cry and said "I kept telling you 'No' and I kept telling you to stop." Tr. III p. 25. Dean Shelt approached them and noticed that K.H. was upset and agitated. She did not appear to have the demeanor of a student that had just been caught doing something wrong, but instead appeared to be emotionally upset. Dean Shelt asked K.H. what was wrong, but she did not respond. Instead, Scruggs told Dean Shelt that K.H. was having some family issues. Dean Shelt then told them to return to wherever they were supposed to be.

[7] Scruggs walked away and K.H. went to the bathroom to try to clean herself up. K.H. then went into the lunchroom crying and very upset which was out of character for her. She asked her friend Dajsha Brown if she could borrow her phone to call her mother. After she spoke to her mother, K.H. continued to cry. She then told her friend, Brown, that she had been raped by "J-Rock." Tr. II pp. 49-50. Brown knew that J-Rock was Sruggs's nickname. Brown, along with another friend, took K.H. to the nurse's office. When the girls arrived at the nurse's office, they were redirected to Dean Shelt's office. K.H. told Dean

Shelt that Scruggs had raped her. Dean Shelt subsequently contacted the appropriate school officials, law enforcement officers, and K.H.'s mother.

[8] After speaking with police, K.H. went to the emergency room with her mother. She was still visibly upset and crying when she arrived at the hospital. Once her mother calmed her down, K.H. was examined by a nurse and several samples were taken for a rape kit. The nurse noted that K.H. had "at least eight pretty sizeable" lacerations and several smaller injuries on her external genitalia. Tr. III p. 121. The lacerations were likely caused by blunt force trauma. The type and substantial quantity of injuries suffered by K.H. suggested that she did not assist Scruggs in inserting his penis into her vagina. One of the nurses who examined K.H. testified that out of the several hundred exams that she had done, she could not remember ever seeing so many injuries to that area. Internally, K.H. also suffered from a bruised hymen and her cervix had redness which appeared to be a laceration; neither of these injuries are very common, even in cases of sexual assault.

[9] The vaginal and cervical swabs showed the presence of seminal material. The speculum swabs also showed the presence of seminal material. The external, internal, and genital swabs showed the presence of blood and seminal material. The external genital swab also matched Scruggs's DNA to the extent that the lab could not exclude patrilineal related male relatives. A secretion swab from K.H.'s mid-back showed seminal material with sperm and the DNA matched that of Sruggs. K.H.'s underwear also showed evidence of seminal fluid.

Seminal fluid was also found on K.H.'s sweatpants, black jacket, and tank top that she had been wearing that day.

[10] School officials were able to pull surveillance footage that corroborated what K.H. had told police and school officials. There was no camera in the hallway where the rape occurred, but there were cameras nearby which show K.H. and Scruggs before and after the rape. The police collected Sruggs's clothing and the paper towels from the bathroom in which K.H. had tried to clean herself up. A buccal swab was also taken on Scruggs the following day. After the rape occurred, K.H. did not return to the high school. She began taking classes online. Her family also decided to move after the rape occurred.

[11] On March 19, 2014, the State charged Scruggs with rape as a Class B felony and two counts of criminal confinement as Class D felonies. After the first trial, Scruggs was acquitted of one count of criminal confinement, and the jury hung on the other two charges.

[12] On June 27, 2016, a second jury trial commenced. On the day of the trial, Scruggs's attorney filed a Defense Witness and Exhibit List listing, *inter alia*, Cameron Washington as a witness for the defense. The State objected to Washington due to the late notice. The trial court subsequently excluded his testimony and denied a continuance request. At the end of the trial, the jury returned guilty verdicts on both charges. The trial court subsequently merged the counts and sentenced Scruggs to ten years of incarceration with four of

those years suspended to probation and ten years on the sex offender registry. This appeal follows.

# Discussion and Decision

## I.   Sufficiency of the Evidence

[13]   Our standard for reviewing the sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. This evidence need not overcome every reasonable hypothesis of innocence; it is sufficient so long as an inference may reasonably be drawn from it to support the verdict.

*Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (internal citations and quotation marks omitted). The trier of fact is responsible for resolving conflicts of testimony, determining the weight of the evidence, and evaluating the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind. Ct. App. 1998). Additionally, "a rape conviction may rest solely on the uncorroborated testimony of the victim." *Wooden v. State*, 657 N.E.2d 109, 111 (Ind. 1995).

[14] Here, Scruggs was charged with rape as a Class B felony. He admitted to having intercourse with K.H. and ejaculating on her back. (Tr. III 197-98). Scruggs is only challenging whether there was sufficient evidence to support the finding that he had intercourse with K.H. without her consent. K.H.'s testimony was very clear and unequivocal that she did not consent to the intercourse with Scruggs and she told him no multiple times. K.H.'s testimony, by itself, is sufficient to support the rape conviction. *See id.*

[15] However, the physical evidence also supported K.H.'s testimony that the intercourse was not consensual. The medical evidence showed that K.H. sustained numerous internal and external injuries, including a bruised hymen, an injury to the cervix, blunt force trauma, and lacerations, all of which are inconsistent with a consensual encounter. Furthermore, multiple witnesses testified to K.H.'s demeanor after the rape. The police officers, her friends, the school's dean, and a nurse testified that K.H. was visibly upset and crying. Finally, the surveillance footage of K.H. and Scruggs before and after the rape corroborate K.H.'s testimony.

[16] Scruggs points to evidence, including a nurses' testimony that it was theoretically possible that the injuries came from a consensual encounter and his own testimony, to support his assertion that K.H. consented. His argument, however, is merely a request to reweigh the evidence, which we will not do. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Consequently, we conclude that there was sufficient evidence to support Scruggs's conviction.

## II.    The Trial Court Acted Within Its Discretion When It Excluded a Defense Witness and Denied a Continuance

[17]    Scruggs claims that the trial court abused its discretion by not allowing defense witness Cameron Washington to testify.  "Trial courts have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State."  *Williams v. State*, 714 N.E.2d 644, 651 (Ind. 1999).  Defense counsel knew about Washington about a month before the second trial.  Washington was in jail, but his counsel told defense counsel that she could call him to arrange a time for her to talk to his client; however, defense counsel kept "forgetting to do that." Tr. II, p. 10.  The availability of Washington was also at issue, as he was on trial himself across the hall on the day of Scruggs's trial.  Therefore, the State was unable to interview him to discuss his potential testimony.

[18]    Further, a brief recess would not have remedied the problem as Washington's trial was expected to last several days.  This was the second trial on Scruggs's charges and multiple witnesses were prepared to testify.  Due to the belated disclosure, the State did not have time to learn of the existence or substance of Washington's potential testimony.  The State would have been greatly prejudiced had Washington been allowed to testify because it did not have the opportunity to meet with the witness to discuss his potential testimony or follow up on anything.

Moreover, there were concerns regarding the admissibility of the potential testimony. Defense counsel indicated that Washington would have testified about a conversation between K.H. and some other individuals which he allegedly overheard. Washington himself was not a participant in the conversation. Defense counsel indicated during the offer of proof that Washington had told her that he heard K.H. tell another individual that her mother was making her pursue the rape charge. The proposed testimony had multiple layers of hearsay, and Scruggs has not established that the conversation would have been admissible.

Finally, "we will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." *Williams*, 714 N.E.2d at 652. There was substantial evidence that Scruggs was guilty of rape from K.H., other witnesses, the surveillance video, and the medical evidence. It is unlikely that the jury would have given much consideration to Washington's testimony, especially since much of Washington's testimony would have been excluded due to issues with hearsay leaving him little if anything to testify about. Accordingly, we conclude that the exclusion of his testimony was harmless error.

We affirm the judgement of the trial court.

Vaidik, C.J., and Brown, J., concur.