**Bobby Joe TRIPLETT, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 881S206.**

Supreme Court of Indiana.

July 19, 1982.

Donald A. Scheer, Cassidy & Scheer, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Robbery Resulting in Bodily Injury, Ind. Code § 35-42-5-1 (Burns 1979) and sentenced to twenty (20) years imprisonment. One issue raised by this appeal compels us to reverse and remand the cause for a new trial.

On September 18, 1980, Marion police confronted the Defendant and transported him to police headquarters for questioning. Defendant argues that his warrantless seizure and detention was an arrest having no probable cause, that his subsequent confession given during the detention was inadmissible, and that the trial court erred in its denial of Defendant's pre-trial motion to suppress and in admitting the confession into evidence over his timely and proper objection.

Such a challenge casts on the State the burden of proving by a prepon-

derance of the evidence that the confession was admissible and was not the fruit of an illegal arrest. *Brown v. Illinois*, (1975) 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416. When reviewing the denial of a motion to suppress a confession and the admission of that confession at trial, we do not reweigh the evidence. Rather we look to the evidence supportive of the trial court's ruling to determine if it was substantial and probative and hence sufficient to sustain that ruling. *Jackson v. State*, (1980) Ind., 411 N.E.2d 609, *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411. Summary statements from the police that they had arrived at the conclusion that the detention of Defendant did not constitute an arrest requiring a finding of probable cause, will not do. The trial court must make its determination from facts, not the conclusions of witnesses.

The facts as presented at the suppression hearing are not in dispute. Four days after two men robbed a tavern patron, Marion police received a tip from an informant, with whom they had never dealt before, advising that he knew two men who claimed to have participated in the robbery. Sergeant Biddle interviewed the informant and received information about the alleged bandits, but after consultation with other police officers, they determined that they had insufficient information to secure an arrest warrant for the suspects. Nonetheless, Biddle wished to question the suspect Triplett, and went to his residence, accompanied by four to six uniformed officers. He was informed the suspect was not at home and left to seek a search warrant.

Uniformed officers remained in marked cars at the front and rear of the suspect's residence. Officer Amos Randall, in charge of this surveillance, testified that "he knew what to do * * * take him into custody * * whether he wanted to be or not."

About twenty minutes after Biddle's departure, the defendant left his residence and while on his front lawn, three police officers in uniform and carrying firearms approached him. Officer Randall asked him for identification and then told him, without stating any reason, to come down to the station for questioning.

Randall said that he concluded that the Defendant voluntarily submitted to the police request "cause we didn't have to put our hands on him or anything to say get into the car, assist him into the car * * * " (Record at 249) as the defendant was first searched and then placed in the rear security cage of a squad car. There was no advisement by police that Defendant was not under obligation to accompany them and was free to leave. Defendant testified that he offered no resistance because "they had me surrounded when I came out of there, if I would have tried to make a move or do anything, I might have got my head busted." (Record at 357).

Once at police headquarters, the defendant was placed in an interrogation room and was read *Miranda* advisements. He was not told, at any time, that he had not been formally charged or that he was free to leave. Instead, a uniformed guard watched him for three hours, leaving the defendant with the impression that until they were finished with him, he was not free to leave.

The issue here is whether the defendant was under arrest or whether he voluntarily accompanied the police and submitted to interrogation and to the deprivation of his liberty. If the defendant was taken into custody without probable cause and interrogated against his will he was under arrest and unlawfully detained, and the State will not be permitted to utilize the product of the illegal detention. *Dunaway v. New York*, (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824. "[D]etention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Dunaway, supra*, at 216, 99 S.Ct. at 2258, 60 L.Ed.2d at 835. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all circumstances surrounding the incident, a reasonable person would believe that he was not free to leave." *Unit-*

*ed States v. Mendenhall*, (1980) 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509, (plurality opinion). *See also Barber v. State*, (1981) Ind.App., 418 N.E.2d 563.

In *Dunaway, supra*, the Supreme Court analyzed the circumstances surrounding the custodial interrogation of the defendant without probable cause, found that he reasonably believed that he was not free to leave, and held that the police had violated the Fourth Amendment by their seizure of him. The facts of *Dunaway* are remarkably similar to the case at bar. The police received information from an informant implicating Dunaway in a crime. Following an interview with the informant, police decided that they did not have sufficient information to secure an arrest warrant. As in the instant case, the suspect was then not questioned where he was found, but was instead transported by the police from a residence to the police station, placed in an interrogation room without being charged or being informed that he was free to go, and questioned until he made incriminating statements. In both *Dunaway* and our case, officers testified that the suspect would have been physically restrained had he refused to accompany the officers.

Our Court of Appeals has also considered a factual situation involving the same police officers who were involved in the instant case. In *Barber v. State*, (1981) Ind.App., 418 N.E.2d 563, the Marion police had received a tip from an unknown informant concerning the suspect, Barber. Sergeant Biddle approached him outside his home and asked him to come to police headquarters for questioning. Barber, however, had been arrested previously. Defendant had never had contact with the police before. Barber was never touched by the police and rode in the front of the squad car, in contrast to Defendant who was thoroughly searched and placed in the rear security compartment of a squad car. Police offered Barber refreshments and left him unguarded during the ten minutes between his arrival at the station and "interrogation," in contrast to the constant guarding, without amenity, of the defendant during a period of three hours.

The Court of Appeals found the facts in *Barber* presented a close question of whether the Defendant's confession was inadmissible as an exploitation of an illegal arrest:

> "Were it not for defendant Barber's previous experience with law enforcement * * *, we would be drawn to an opposite result in this case. * * * We will not compromise the integrity of our court by allowing 'law enforcement to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the "procedural safeguards" of the Fifth.' However, we find sufficient evidence in the record to support the trial court's finding that the defendant did not believe he was under arrest or otherwise not free to terminate his encounter with the police in this case." *Barber, supra* at 567.

■ The facts which prompted the Court of Appeals to hold that a lawful arrest had taken place in *Barber* are not present in the case at bar. Defendant had not had the previous experience of Barber which, the Court of Appeals determined, reasonably allowed him to believe that he was free to leave. Defendant had had no previous experience, either with the particular police officers or with police procedures, when he was confronted on his front lawn by armed officers who asked him to accompany them for questioning, and then searched him and transported him to police headquarters and subjected him to a lengthy interrogation session. A police guard testified that the defendant was intimidated by the experience. Moreover, the Deputy Prosecuting Attorney, who had been present at the interrogation, stated that he would not make a definite determination that the defendant "was voluntarily at the station, voluntarily cooperating, and voluntarily waiving [his] rights." (Record at 301) The police testified that the Defendant was free to leave at any time and that he had voluntarily accompanied them and submitted to the interrogation; but there was nothing about the episode that would have conveyed that

impression to the defendant. In fact, the events demonstrate that the police themselves were uncertain of his status but wanted him to think that he was under arrest. They had every reason to believe that he reasonably believed that he was under arrest but did nothing to dispel this belief.

No intervening events broke the connection between Defendant's illegal detention and his confession. "A confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint." (Citations omitted). *Taylor v. Alabama,* (1982) —— U.S. ——, 102 S.Ct. 1707, 72 L.Ed.2d 131. As in *Dunaway,* we must conclude that the defendant reasonably believed that he was not free to leave police custody.

The policy behind applying the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment in the only effectively available way—by removing the incentive to disregard it. (Citations omitted)." *United States v. Calandra,* (1974) 414 U.S. 338, 347, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561, 571. The State has failed to show that the defendant's confession was not obtained by means other than the exploitation of an illegal arrest. There is no dispute about the facts surrounding the "seizure" of the defendant or his detention. The State has presented only conclusions of police officers as to the ultimate fact of whether or not the defendant was acting voluntarily. The facts do not sustain its conclusion; hence it has failed to carry its burden.

The admission of the defendant's confession, over a proper in-trial objection, was reversible error. The judgment of the trial court is reversed and the cause remanded for a new trial.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.