**Carl CAMPBELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1184S446.

Supreme Court of Indiana.

Nov. 20, 1986.

Susan K. Carpenter, Public Defender, June D. Oldham, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Carl Campbell was convicted after a jury trial of murder, Ind.Code § 35–42–1–1 (Burns 1985 Repl.), robbery, a Class A felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and confinement, a Class B felony, Ind.Code § 35–42–3–3 (Burns 1979 Repl.). He was sentenced to concurrent terms of imprisonment of 30 years for murder, 20 years for robbery and 10 years for confinement.

In this direct appeal, Campbell raises five issues:

1) Sufficiency of the evidence;

2) Whether the trial court properly admitted the defendant's confessions in light of Campbell's claims that the statements resulted from an illegal detention and that the State had not proven corpus delicti;

3) Whether a police log book was properly admitted into evidence;

4) Whether the court correctly excused a juror who was ill; and

5) Whether the court properly denied the defendant's motion for continuance sought after the State filed an expanded witness list on the first day of trial.

The facts most favorable to the judgment show that Campbell and three companions were driving around the town of Laurel in Campbell's vehicle on July 30, 1979. After hearing that one Robert Rose had several hundred dollars, the four youths decided to rob him. Rose subsequently accepted their invitation to join them in Campbell's automobile, and they drove about for a short time. They stopped in an area east of Laurel called Redgate. One of the youths, Mitchell Hurd, began beating the victim, who fell in some glass while attempting to escape. The assault continued until the victim was unconscious. All four men helped to remove the victim's wallet and clothing, but they found only a few dollars. As the victim bled profusely, they discussed ways of killing him. Rose's hands and legs were tied with a belt, and Campbell helped lift him into the trunk.

Campbell drove the car to a gas station where one of the group bought a gallon jug of gas and then proceeded to a secluded area by the river near Cedar Grove. According to Campbell, Hurd poured gasoline on the victim but the unleaded fuel would not ignite. It was undisputed that Hurd wrestled with the victim at the river bank and they fell into the water. Hurd and Maxie attempted to drown the victim, and all three were immersed for 15 to 20 seconds. Hurd and Maxie returned to the bank and looked for the victim, who surfaced about 15 feet away and began swimming in the opposite direction. Campbell testified that Maxie pulled the victim back to the bank and held him under the water for several minutes. Rose was never seen again by either the youths or the victim's family.

The original police investigation yielded no explanation for the victim's sudden disappearance. Covy France, one of the four youths in Campbell's car that day, was arrested on an unrelated charge several years later. France volunteered details of Rose's murder in exchange for favorable treatment by the prosecutor. After taking France's statement, police questioned Campbell and obtained his confession in October 1983.

## I. Sufficiency of the Evidence

When reviewing a sufficiency claim, this Court will consider only the evidence most favorable to the State and the reasonable inferences drawn therefrom which support the jury's verdict. A conviction will be affirmed if there was evidence of probative value from which the jury could determine that appellant was guilty beyond a reasonable doubt. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Campbell claims the State failed to prove to the jury that the crime occurred in Franklin County. The county was never specifically mentioned as the site of the crimes during the trial, although many references were made to towns or areas within the county. At the end of trial, outside the presence of the jury, defense counsel sought a directed verdict based on insufficient proof of venue. The trial court took judicial notice that the locations mentioned during trial were within Franklin County and denied the motion.

■ Proper venue must be proven by the State in the same manner as the essential elements of the crimes as defined by statute, but only by a preponderance of the evidence. *Sizemore v. State* (1979), 272 Ind. 26, 395 N.E.2d 783. Proof of venue is required because the defendant has a constitutional right to be tried in the county in which the crime was committed. Ind. Const., Art. 1, § 13; Ind.Code § 35–32–2–1. A claim on appeal that evidence was insufficient to prove venue must be treated in the same manner as other claims of insufficient evidence. *Morris v. State* (1980), 274 Ind. 161, 409 N.E.2d 608. Every intendment will be made in favor of the trial court on this issue. *Smith v. State* (1980), Ind.App., 408 N.E.2d 614. Circumstantial evidence is no different than other evidence for purposes of venue and may be sufficient standing alone. *Morris v. State* (1980), 274 Ind. 161, 409 N.E.2d 608.

■ The charging information alleged the crimes occurred in Franklin County. The unconflicting evidence traced the crime from its start in the town of Laurel to an area called Redgate about two to three miles east of Laurel. After the robbery, Campbell drove his automobile back to Laurel and then through Brookville to a place near Cedar Grove where the murder occurred. All these locations are in Franklin County. The jury was told that the Laurel sheriff's office and the Franklin County sheriff's office had investigated the crime. The jury, whose members obviously lived within the county, also viewed photographs of Redgate and Cedar Grove.

"[I]f the facts and circumstances are of a character to permit the jury to infer that the crime occurred in a given county, such a finding will not be disturbed on appeal." *Sizemore v. State,* 272 Ind. at 32, 395 N.E.2d at 787. We believe the jury could infer from the substantial circumstantial evidence that the crimes charged occurred in Franklin County.

Campbell incorrectly characterizes the trial court's action in taking judicial notice as depriving the jury of deciding the issue of venue. The trial court read the charging information during preliminary and final instructions. The jurors were told that the State would have to prove the crimes as charged. Thus, they were aware that they could not return a guilty verdict if the State did not prove that the crimes occurred in Franklin County.

■ Citing different grounds, Campbell also attacks the sufficiency of evidence supporting the individual convictions. He first claims the State failed to prove confinement as charged in the information, which read in relevant part:

"... did then and there unlawfully and knowingly confine Robert E. Rose without his consent by taking him to a secluded area in Franklin County, Indiana, and strike and beat him when Robert E. Rose attempted to leave...."

Relying on the language "by taking him to a secluded area," Campbell argues that the information charges confinement occurring only *on the way to* Redgate and that the evidence showed confinement only after the youths' *arrival* at Redgate. A reading

of the information demonstrates that this distinction is without merit; the evidence showed without conflict that the act of confinement occurred when force was used to prevent the victim from leaving Redgate and that the confinement continued at Cedar Grove, where the victim received a second beating when he attempted to escape and then was drowned.

 Campbell next alleges that the State failed to prove that Rose was killed, and therefore his murder conviction cannot stand. Circumstantial evidence alone is sufficient to support a murder conviction. *Collins v. State* (1980), 274 Ind. 619, 413 N.E.2d 264. The production of the victim's body is not required in a murder prosecution if circumstantial evidence shows that death did occur. *Stocking v. State* (1855), 7 Ind. 326. Both France and Campbell testified that the victim, already badly beaten, was held under water for several minutes. France last saw the victim's body, face down, floating down the river. The river level was high at the time, and the unsuccessful search for the body did not begin until four years later. The victim had not been seen since the day of the attack. This evidence, albeit circumstantial, was sufficient to support the jury's determination that the victim died and that Campbell aided his cohorts in committing that crime.

 Campbell levels his final attack on the robbery conviction, claiming that the only supporting evidence is the "inherently incredible" testimony of France. A robbery conviction may be sustained on the uncorroborated testimony of an accomplice. *Sumner v. State* (1983), Ind., 453 N.E.2d 203. Campbell notes that France testified that he lied in two of his three statements to protect himself and others. The town marshall testified that France's reputation for honesty was poor. However, Campbell can hardly challenge France's testimony as "inherently incredible" when much of it corresponded to his own.

## II. Confessions

Before trial, Campbell filed a motion to suppress the two statements which he had given to police when they initially questioned him. He alleged the taped statements were inadmissible because they resulted from an illegal detention in violation of the Fourth Amendment. The trial court denied the motion, and the tapes were admitted at trial over his objection.

 Statements, however voluntary, are inadmissible under the Fourth Amendment if they are the product of an illegal detention and not the result of an independent act of free will. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Dillon v. State* (1983), Ind., 454 N.E.2d 845, *cert. denied*, 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 145. A defendant is under arrest and detained in violation of the Fourth Amendment if he is taken into custody without probable cause and interrogated against his will. *Triplett v. State* (1982), Ind., 437 N.E.2d 468. The record indicates that the only evidence that police had at the time they questioned Campbell was the unconfirmed statement of France. Standing alone, it was not sufficient to support a finding of probable cause. Because police did not have probable cause for an arrest, the issue is whether Campbell was taken into custody or whether he voluntarily accompanied the police and submitted to interrogation. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980).

 The officers who first confronted Campbell at his home were in plain clothes and their weapons were hidden. Campbell conceded that the officers were pleasant and that they *asked* whether he would go to the sheriff's office for questioning. They specifically told him that he was not under arrest and that they would drive him home. Campbell had no previous encounters with the law besides minor juvenile

offenses. He agreed to accompany the officers but went to his bedroom for a jacket. One of the officers followed him. Campbell testified at trial that he believed he had no choice but to go with the officers, although he qualified that statement during the course of his testimony.

Campbell was transported by the officers to the sheriff's office in the backseat of an unmarked police vehicle. He was not handcuffed or otherwise restrained. Campbell testified that the conversation in the vehicle was friendly and did not involve the crimes at hand. The police, however, did not explicitly tell Campbell that he was free to go at any time.

Upon arrival at the police station, Campbell was taken into an interrogation room next door in the sheriff's office. He was read his *Miranda* rights. Campbell testified that one officer said they had enough evidence to hang him so he should just confess. However, the same officer testified that he did not remember making that comment. The officer did inform Campbell that France had made a statement implicating Campbell in the victim's death.

Campbell subsequently requested time alone to pray because he believed that implicating others in the crime would violate his religious beliefs. The officers left Campbell alone in the room for fifteen to twenty minutes. The officers testified that Campbell then approached them with his confession. Campbell alleges the officers made the first move. It is undisputed that Campbell's confessed on tape about two hours after he was taken to the station. Immediately afterward, Campbell taped a second statement within a police vehicle as he led police to the scenes of the crimes. Campbell contends that his case is analogous to *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), in which the Supreme Court found that the defendant's confession was inadmissible as the result of an illegal detention. The facts in *Dunaway* are substantially similar to this case, with three important exceptions. The officers in *Dunaway* were uniformed and testified that the defendant

would have been physically restrained had he refused to accompany the officers. They also never informed the defendant that he was not under arrest. In this case, the officers' informal dress would have promoted a less coercive atmosphere, and they told Campbell that he was not under arrest. Furthermore, the officers testified that they would have left if Campbell had not consented to the questioning. The other cases which Campbell cites to support his argument likewise are distinguishable from the case at hand because they present even more obvious police force than *Dunaway*. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

In view of all of the circumstances surrounding Campbell's statement, we conclude that a reasonable man would not have considered himself in custody. Therefore, Campbell's Fourth Amendment attack must fail. In so deciding, we note that this case presents a close question. We place special significance on Campbell's own description of the atmosphere as congenial, the police officer's express statement that Campbell was not under arrest and Campbell's apparent reticence in testifying that he felt coerced to accompany the police and make the statement.

■ Campbell alleges a second ground for attacking the admissibility of his taped statements. He contends that his confession was not properly admitted because the State failed to establish *corpus delicti* beforehand. To allow admission of a confession, the State must present independent evidence showing that the criminal act described in the statement actually occurred. However, the corpus delicti need not be proven beyond a reasonable doubt before the statement is admitted and may be established solely by circumstantial evidence. *Graham v. State* (1984), Ind., 464 N.E.2d 1. Campbell claims that the only independent evidence which establishes corpus delicti is France's testimony, which he again alleges is "inherently incredible." Having already

rejected that claim, we conclude that the State adequately proved *corpus delicti.*

### III. Police Records

The State introduced a handwritten police log during direct examination of the former town marshall. He identified the log book and testified that it contained reports of each call or complaint received by his office. He further testified that he was the keeper of such records, although he did not make all of the entries.

Campbell claims the log book was inadmissible hearsay and that the State failed to establish a proper foundation to allow admission of the log book under the business records exception to the hearsay rule. He is correct.

 The business records exception permits the admission of documentary evidence if it is identified by "its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." *Jones v. State* (1977), 267 Ind. 205, 209, 369 N.E.2d 418, 420, *overruled on other grounds, Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. The sponsor of the exhibit need not have made the entry, filed it or have had firsthand knowledge of the transaction represented at the time of entry. He need only show that it is part of the records kept in the routine course of business and placed in the record by one authorized to do so, who had personal knowledge of the transaction represented at the time of entry. *Id.* The former marshall did not indicate the author of the entries or the time at which the entries were made. Therefore, the State failed to establish a proper foundation, and the trial court erred in admitting the log book over defendant's objections.

 However, we find that this error was harmless. The log book was introduced to show that a missing persons report concerning the victim had been filed by his family. This evidence was merely cumulative to direct testimony that the victim's family had not seen him since the attack.

### IV. Excusing Juror

One juror was suffering from the flu on the second day of trial. On at least two occasions, that juror had to leave the courtroom because she was ill. The trial judge asked the juror if she believed she could listen attentively to the evidence, and she indicated that she would have difficulty. Over defense counsel's objection, the judge excused the juror and replaced her with an alternate.

 A trial court is empowered to "replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Indiana Rules of Trial Procedure, Trial Rule 47(B). It is within the trial court's discretion to invoke the rule and replace a juror with an alternate; that ruling will not be reversed absent an abuse of discretion. *Ferry v. State* (1983), Ind., 453 N.E.2d 207.

 Campbell now makes the curious argument that he was deprived of his constitutional right to trial by an impartial jury because "the juror he chose to include in the jury was not allowed to continue." He does not claim that the alternate juror was partial nor does he allege that he objected to selection of the alternate during voir dire. We fail to see any merit in this argument. The trial court's actions can only be considered as protecting Campbell's right to an impartial jury, not derogating it. The original juror's illness could have caused her to be inattentive. She might have been more willing to compromise during jury deliberations simply to expedite the process. Inasmuch as the alternate was among the jurors selected during voir dire, the substitution of the juror was not in any way irregular. The trial court did not abuse its discretion.

## V. Continuance

On the first day of trial, the State provided the names of several witnesses not previously disclosed to defense counsel. Furthermore, the State revealed to defense counsel that France had made another statement which the State planned to use in its case-in-chief. Approximately six months before trial, the court had granted a defense motion to produce a witness list, exhibit list and copies of all written or recorded statements.

Defense counsel's motion for continuance was denied. However, the trial court ruled that Campbell could have a recess to listen to the taped statement and to interview witnesses before they testified. Campbell did listen to the tape before voir dire, but the record does not reflect whether he interviewed all of the witnesses before they testified. Defense counsel effectively cross-examined all of the witnesses.

The objective of pretrial discovery is to promote justice and to prevent surprise by allowing the defense adequate time to prepare its case. *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142. A continuance is the normal remedy when the State has violated an order for discovery, although a broad range of sanctions are within the trial court's discretion. The trial court's ruling will not be reversed absent clear error. "The trial judge is in the best position to determine if any harm has been sustained by noncompliance with an order for discovery. He, likewise, is in the best position to determine what judicial acts may alleviate or eliminate the damage." *Rock v. State* (1981), Ind., 426 N.E.2d 1320.

While the State's failure to provide a witness list until the date of trial very well could necessitate a continuance in some cases, we fail to see that Campbell required one. Two of the "undisclosed" witnesses were officers who took Campbell's confession. Their roles as State's witnesses were certainly expected, particularly considering that a transcript of the statement had been presented to Campbell before trial. Another of the omitted witnesses was the former Laurel town marshall, who merely identified the log book and testified that a missing persons report concerning the victim had been filed. The final two disputed witnesses were the victim's brother and the victim's cousin, who described the victim's habits and unusual disappearance. The prosecutor already had informed defense counsel before trial that members of the victim's family would testify and revealed the substance of their expected testimony at that time. Campbell's reliance on *Johns v. State* (1968), 251 Ind. 172, 240 N.E.2d 60, is misplaced. That case involved a much clearer instance of prosecutorial abuse of discovery because the identity of four witnesses was not revealed until they testified and the State provided no explanation for the omission.

The delayed production of France's taped statement was justified. The prosecutor had obtained it on a Saturday, two days before trial. He was unable to transcribe it by Monday because his office lacked the proper equipment. However, defense counsel was able to listen to the tape before voir dire and cross-examined France in great detail about the inconsistencies in his statements.

This is not a case in which the State kept its witness list secret in the hopes of surprising an unprepared opponent. The prosecutor told the court that the omission was an oversight on his part, and the prosecutor's actions support that statement. He identified some of the witnesses before trial. The identity of several other witnesses was clear before trial, despite the absence of a promptly delivered list, and their role as State's witnesses no doubt was anticipated. Under the circumstances, the trial court's reliance on brief recesses to cure the flaws in the discovery process appears appropriate. We find no "clear error" in that ruling.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.