

IN THE

# Court of Appeals of Indiana

Desiree Heitz,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

FILED

Jun 06 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 6, 2025

Court of Appeals Case No.
24A-CR-802

Appeal from the Marion Superior Court

The Honorable Jose D. Salinas, Judge

Trial Court Cause No.
49D23-2212-F6-033581

**Opinion by Judge Weissmann**
Judge Pyle concurs.
Judge Felix dissents with a separate opinion.

**Weissmann, Judge.**

The fundamental right to a speedy trial, guaranteed by both the Sixth Amendment to the United States Constitution[1] and Article 1, § 12 of the Indiana Constitution[2], "imposes an affirmative duty on the government to ensure that criminal defendants receive the swift administration of justice." *Watson v. State*, 155 N.E.3d 608, 611 (Ind. 2020). Indiana Criminal Rule 4(C) implements this right by setting a strict one-year deadline for the State to bring a defendant to trial. This deadline may be extended only under limited circumstances, including when "delays [are] caused by a defendant." Crim. R. 4(C). Although Criminal Rule 4(C) imposes on the State the burden of bringing defendants to trial without creating any reciprocal duty by defendants to act to ensure their own timely trial, these roles were effectively reversed in this case.

As the State struggled for 10 months to first collect and then share documents essential to its prosecution of Desiree Heitz for identity theft, Heitz repeatedly declined to request a trial date. The State, seemingly unprepared for trial, also did not request a trial date. This prompted the trial court, in accordance with its own policy, to refrain from setting the case for trial. When Heitz eventually requested a trial and it was scheduled for a date 15 months after she was

---

[1] The Sixth Amendment to the United States Constitution specifies that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ."

[2] Art. 1, § 12 provides that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

charged, the trial court determined that Heitz was responsible for the delay and refused to discharge her under Criminal Rule 4(C). But Heitz's act of not seeking a trial date, which the State also did not request, did not extend the one-year deadline for her trial. This is because her failure to request a trial date did not constitute "delays caused by a defendant" within the meaning of Criminal Rule 4(C). Because the State ultimately failed to bring Heitz to trial within the 4(C) period, we reverse and remand with instructions to grant Heitz's motion to dismiss.

## Facts

[3] Heitz was criminally charged in December 2022. Thereafter, at least eight different deputy prosecutors and one graduate legal intern appeared at various times and struggled to complete discovery in Heitz's case. A trial date was not requested until December 2023—almost a year after the charges were filed—largely due to the trial court's policy of not setting a trial date until the case was ready for trial. When the court finally set Heitz's trial for March 11, 2024, Heitz contended the date was outside Criminal Rule 4(C)'s one-year deadline. Heitz later moved to dismiss the charges under the rule. The trial court denied the motion, finding that Heitz's repeated failure to seek a trial date constituted delay that effectively stopped the clock for purposes of the State's one-year deadline for prosecution under Criminal Rule 4(C). Heitz appeals.

[4] As with all Criminal Rule 4(C) cases, we must look closely at the events in Heitz's prosecution as it progressed through the date of her motion to dismiss. The prosecution began on December 14, 2022, when Heitz was charged with

two counts of Level 6 felony identity theft for allegedly using someone else's identity to both buy a vehicle and obtain medical care in Marion County. Heitz was arrested three days later, and the trial court conducted an initial hearing on December 19, 2022. Three days after that hearing, the trial court released Heitz to home detention with GPS monitoring.

[5] On January 17, 2023, Heitz failed to appear for a pretrial conference because she was in custody on other charges in Johnson County. Several days later, Heitz was released by Johnson County and soon returned to custody in Marion County. On February 14, 2023, Heitz appeared in court in Marion County for both an attorney's conference in this case and a separate prosecution in which she was charged with theft of a catalytic converter.

[6] At the start of the attorneys' conference, the trial court asked Heitz's counsel about the status of this case. The attorney replied:

> Not pursuing a trial setting, Judge, just a pretrial in due course. It sounds like the State is considering if there's additional charges to file, so there is discovery outstanding . . . so we're not requesting a trial setting.

Tr. Vol. II, p. 30. As the hearing was concluding, Heitz's counsel reiterated, "Not requesting a trial date, Your Honor." *Id.* at 45. The State also did not ask for a trial, and the trial court did not schedule one.

[7] On March 28, 2023, Heitz's counsel described the nature of the discovery issues:

Judge, both these cases got some discovery outstanding. I reached out to the State to talk about the discovery we're looking for and what's missing. On the case ending in 581, it's—there's going to be some significant discovery, we think. So we're not in a rush to start negotiating until both sides kind of see kind of more (sic) what the discovery is going to look like.

*Id.* at 49.

At hearings on May 9 and June 13, 2023, Heitz's counsel reiterated that the defense was still waiting for the State's discovery. Little had changed at the next hearing on July 25, at which Heitz's counsel reported:

On [this case], there's a significant amount of discovery that we haven't received. We've been in contact with three different prosecutors on this one. Ms. Garcin's (phonetic) the third prosecutor so I understand there's some turnover, but I've consistently heard from prosecutors that there's going to be a lot of discovery coming my way. Have not yet got it.

*Id.* at 63.

Also at the July 25 hearing, Heitz's counsel asked for a discovery deadline. The following exchange then took place:

[DEFENSE COUNSEL]: I'd like a deadline if the Court will give it to me. The case is getting some age.

THE COURT: Here's the thing, I'm asking the questions because my view is lawyers should always talk to each other even if there's -- because there's turnover on both sides.

[DEFENSE COUNSEL]: Yeah.

THE COURT: So just remember, what goes one way usually comes back the other way –

[DEFENSE COUNSEL]: I understand.

THE COURT: -- as far as you know, certain requests. I'm going to do -- well, I'll take anything under consideration. Are you requesting a discovery deadline for that specific discovery or do you still want time to try to work it out with this prosecutor?

[DEFENSE COUNSEL]: I'd like a discovery deadline at a date the Court thinks is reasonable. These cases are getting so old. If we could get maybe in September a discovery deadline that gives us plenty of time –

THE COURT: No, we're going to do this. We're going to come back in August, late August. . . . Late August should be plenty of time to get the discovery exchanged.

*Id.* at 64. The deputy prosecutor then acknowledged, "I've spoken with the victim[,] and I know that we have at least 100 pages of documents that need to be redacted before they are turned over." *Id.* at 64-65.

[10] On August 29, 2023, more than eight months after Heitz was charged, Heitz's counsel reported the defense still had not received the State's discovery:

I just have heard from multiple prosecutor's [sic] multiple times that there's lots of information relevant to the charge that they need to either go through and make sure there's not confidential information that they can't share with me. So it's just discovery that they would need to proceed with the trial that I haven't gotten.

*Id.* at 69-70. The State, represented by a graduate intern supervised by a prosecutor newly assigned to the case, noted that the discovery needed to be uploaded.

[11] At successive hearings on October 2 and 24, 2023, Heitz's counsel again told the court that discovery remained outstanding. The newly assigned prosecutor acknowledged that the issue of delivering discovery to defense counsel "was the amount of redactions to be done with this discovery." *Id.* at 92.

[12] Defense counsel stated that he was not asking for a trial setting until discovery was provided and would argue the delay should be charged to the State for purposes of Criminal Rule 4(C). In response, the trial court explained its policy:

> If I say, are you requesting a trial date? And you didn't request one, then it goes, it doesn't go against the State, that they're—I give as far as CR 4 purposes. Now, if you say, Judge, I'm not asking for them, because we're missing the labs, there may be some nuances there, okay? So State, again, if the record shows that I said, Defense, are you requesting a trial date? They say no. If I have a reason for it, my position is it doesn't go against the State, okay? If it's just, you know, Judge, we're not—we're still in negotiations, or we're not requesting a trial date, that should not go against the State.

*Id.* at 114.

[13] The State did not complete discovery until December 8, 2023, about 10 months after it was required to do so by the Marion County Local Rules. *See* Marion Super. Ct. Crim. R. LR49-CR00-107 (requiring the State "to disclose and

furnish all relevant items and information under this Rule to the defendant(s) within twenty (20) days from the date of the initial hearing," subject to some limited exceptions not applicable here). During those 10 months, the case was handled by eight different deputy prosecutors and at least one graduate legal intern.

On December 12, 2023, after discovery was finally complete, Heitz requested a trial date, as the State still had not done so. The trial court set a trial date for March 11, 2024, and Heitz objected, claiming that the deadline under Criminal Rule 4(C) was February 5, 2024. On January 10, 2024, the State moved to advance the trial date, requesting the trial date be set before February 5. It did not concede, however, that February 5, 2024, was the Criminal Rule 4(C) deadline.

At the next hearing on January 25, 2024, the trial court denied the State's motion to advance the trial date, determining that March 11 was within the Criminal Rule 4(C) deadline. On February 14, 2024, Heitz moved to dismiss the charges under Criminal Rule 4(C), arguing that the State failed to bring her to trial within one year. After a hearing, the trial court denied Heitz's motion, leading to this interlocutory appeal. The trial court agreed to stay the prosecution until this appeal's conclusion.

## Discussion and Decision

Heitz challenges the trial court's denial of her motion to dismiss, arguing that Criminal Rule 4(C)'s one-year deadline for bringing her to trial expired before

she sought discharge by moving to dismiss the charges on February 14, 2024. "We generally review a trial court's ruling on a motion for discharge for an abuse of discretion." *Battering v. State*, 150 N.E.3d 597, 600 (Ind. 2020). But when, as here, "the relevant facts are undisputed and the issue is a question of law, we evaluate a Criminal Rule 4 motion for discharge de novo." *Id.* We conclude that Heitz was entitled to dismissal/discharge because she was not tried within the period prescribed by Criminal Rule 4(C). In doing so, we determine that the trial court's policy on setting trial dates contravenes Rule 4(C).

## A. Criminal Rule 4(C)

[17] Criminal Rule 4(C) specifies that "[n]o person can be held on recognizance or otherwise to answer a criminal charge for a period in aggregate exceeding one year from the date the criminal charge against such defendant is filed, or from the date of the arrest on such charge, whichever is later." The rule further states that "[d]elays caused by a defendant, congestion of the court calendar, or an emergency are excluded from the time period." Crim. R. 4(C).

[18] "The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013) (referring to the speedy trial guarantees in the Sixth Amendment to the United States Constitution and Article 1, § 12 of the Indiana Constitution). The speedy trial

right is "one of this country's most basic, fundamental guarantees." *Watson v. State*, 155 N.E.3d 608, 614 (Ind. 2020).

[19] "Criminal Rule 4(C) . . . places an affirmative duty on the State to bring a defendant to trial within one year from the later of two dates: (1) the filing of charges or (2) the arrest." *Id.* at 615. "The defendant is neither obligated to remind the court of the State's duty nor is required to take affirmative steps to ensure that [the defendant] is brought to trial within the statutory time period." *State v. Harper*, 135 N.E.3d 962, 972 (Ind. Ct. App. 2019). "However, when a continuance is had on the defendant's motion or delay is caused by the defendant's acts, congestion of the court, or an emergency, the time limitation is extended by the amount of time resulting from such delay(s)." *Hobeck v. State,* 225 N.E.3d 208, 212 (Ind. Ct. App. 2023). As this language suggests, Criminal Rule 4(C)'s central purpose is to ensure "a timely trial, not to create a mechanism to avoid trial." *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000).

## B. The Trial Court's Policy On Trial Settings

[20] The catalyst for this dispute is the trial court's policy for setting trial dates in criminal prosecutions. Under the policy, the trial court routinely asked defendants whether they were requesting a trial setting. If the defendants declined to request the court set the trial dates—even if the State also had not sought them—the court generally viewed the defendants' declinations as delay caused by the defendants that could not be attributed to the State for purposes of its one-year prosecution deadline under Criminal Rule 4(C). Although we

appreciate the trial court's effort to manage its considerable docket efficiently, this approach effectively dismantles the underpinnings of Criminal Rule 4(C) by transferring to the defendant the State's duty of timely prosecution.

[21] As this Court recently emphasized, local rules that conflict with the mandate of Criminal Rule 4(C) are invalid. *Ferman v. State*, 232 N.E.3d 133, 138 (Ind. Ct. App. 2024) (observing that "Indiana trial courts are authorized to establish local rules for their own governance," but they "must supplement, not conflict with, 'the rules prescribed by the supreme court or any statute'" in accordance with Indiana Code § 34-8-1-14). The *Ferman* Court invalidated a Fayette County local rule that imposed "a duty on the State *and* the defendant to file a request to 'call a jury.'" *Id.* at 138. The local rule also attributed delay to the defendant when neither party filed such a request. *Id.* at 138. The Court concluded that the local rule improperly placed an affirmative duty on defendants to ensure their own timely trial, thereby conflicting with Criminal Rule 4(C)'s imposition of this burden on the State. *Id.* Like the local rule invalidated in *Ferman*, the trial court's policy here incorrectly shifts the burden of prosecutorial timeliness from the State to the defendant.

[22] We come to this conclusion for multiple reasons. First, the trial court's policy fundamentally misapprehends Criminal Rule 4(C) by: (1) requiring the defendant to affirmatively ensure that the defendant's case is placed on the trial docket; and (2) attributing delay to the defendant for failing to do so even if the State has never requested a trial date and a trial date has never been set. Criminal Rule 4(C) "does not call for any attribution of delay to the State but

only for delay attributable to the defendant or insufficient time due to court congestion or emergency." *Carr v. State*, 934 N.E.2d 1096, 1100 (Ind. 2010). The question therefore is not whether delays should be "attributed" to the State, but whether the defendant's actions or inactions affirmatively extended the Rule 4(C) period.

[23] Second, the policy defies the established principle that the State—not the defendant—bears the obligation to ensure the defendant's timely prosecution. *See State v. Black*, 947 N.E.2d 503, 507 (Ind. Ct. App. 2011) (ruling that a "defendant has no obligation to remind the trial court of the State's duty, nor is [the defendant] required to take any affirmative action to see that [the defendant] is brought to trial" by the Rule 4(C) deadline). Placing the sole burden of timely prosecution on the State without any reciprocal duty on the defendant is consistent with various due process requirements that safeguard a defendant's rights by requiring more of the State than of the defendant.

[24] For instance, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to persuade the factfinder "beyond a reasonable doubt of every fact necessary to constitute the crime charged." *In re Winship*, 397 U.S. 358, 364 (1970). The defendant, on the other hand, is presumed innocent and will be acquitted without presenting any evidence in the defendant's defense if the State fails to meet this burden. *Id.*; *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) (citations omitted); *Higgins v. State*, 783 N.E.2d 1180, 1185 (Ind. Ct. App. 2003) (noting that due process bars the transfer of the State's burden of proof to the defendant). And although due process requires

the State to disclose material, exculpatory evidence to criminal defendants who request it, these defendants have no corresponding duty to reveal incriminating evidence to the State. *Brady v Maryland*, 373 U.S. 83, 87 (1963); U.S. Const. amend. V ("[N]or shall [any person] be compelled in any criminal case to be a witness against himself"); Ind. Const. art. 1, § 14 ("No person, in any criminal prosecution, shall be compelled to testify against himself.").

[25] The *Ferman* Court's reasoning underscores the largely one-sided nature of Criminal Rule 4(C) responsibility. This Court noted that trial courts may not implement policies that effectively "absolve[] the State of its 'affirmative duty' to timely prosecute a defendant." *Ferman*, 232 N.E.3d at 139 (adopting language in the appellant's brief). And like the trial court in *Ferman*, the court presiding over Heitz's prosecution incorrectly charged Heitz with delay for not requesting a trial date, given that Criminal Rule 4(C) places no such obligation on defendants.

[26] Refuting *Ferman's* applicability here, the State contends that Heitz's declination of a trial date and failure to expedite the discovery process were the functional equivalent of a motion for continuance that delayed her trial. But Heitz had no need to seek a continuance. The State never requested a trial date, and Heitz did not seek one until discovery was complete in December 2023. Nothing in the record suggests the State was ready to try Heitz before then, given that the State had struggled to collect and redact the necessary evidence from the victim and did not complete that task until nearly a year after it initiated the prosecution. Treating Heitz's declination of trial dates as defendant-caused

delay was improper because this period amounted to no more than the routine running of the Criminal Rule 4(C) clock while the State prepared its case.

[27] Third, citing the defendant with delay for not requesting a trial date when discovery remains outstanding is inconsistent with the "discovery exception" applied in Criminal Rule 4(C) cases. Under this exception, a continuance sought by a defendant due to the State's failure to comply with discovery requests is not considered delay caused by the defendant for purposes of Rule 4. *Carr*, 934 N.E.2d at 1101. This principle was reinforced in *Wellman v. State*, in which this Court ruled that "[a] defendant should not be forced to either waive the right to a speedy trial or proceed to trial unprepared" and that this "'untenable situation' can arise with even the most innocent of State discovery delays." 210 N.E.3d 811, 816 (Ind. Ct. App. 2023) (quoting *Biggs v. State*, 546 N.E.2d 1271, 1275 (Ind. Ct. App. 1989)).

[28] Given this discovery exception, if the trial court had set a trial date and Heitz had moved for a continuance due to the State's failure to provide discovery, the delay would not have extended the Criminal Rule 4(C) period. *See Marshall v. State*, 759 N.E.2d 665, 670-71 (Ind. Ct. App. 2001) (reversing denial of motion for discharge after finding delay caused by defendant's motion for continuance, which was based on State's failure to respond to defendant's discovery request, was "not chargeable to" defendant for 4(C) purposes). By attributing delay to Heitz that would not have been chargeable to her under the discovery exception if she had sought a continuance of a scheduled trial date, the court effectively creates a catch-22. If Heitz had requested a trial date despite knowing discovery

was incomplete, she may have been forced to choose between her speedy trial rights and adequate preparation for trial—precisely the "untenable position" our discovery exception is designed to prevent. *See Wellman*, 210 N.E.3d at 816. Yet by acknowledging the practical realities of incomplete discovery and declining to request a trial date before the State sought or the trial court scheduled trial, Heitz was charged with delaying her own trial. "[B]eing asked to either waive h[er] rights to a speedy trial or proceed to trial unprepared . . . is a decision that a defendant should not be forced to make." *Marshall,* 759 N.E.2d at 670.

[29] The trial court's policy contravenes *Ferman*'s ruling that, when a trial court's local practice conflicts with Criminal Rule 4(C), the local practice is invalid, and delays arising from noncompliance with such practices cannot be charged to defendants. *Ferman*, 232 N.E.3d at 138. As this Court recognized in *Carr*, Criminal Rule 4(C) establishes a one-year period for prosecution that runs continuously absent specific qualifying interruptions that extend the period—none of which occurred here after mid-February 2023. *Carr,* 934 N.E.2d at 1100-01.

[30] We understand the challenge that trial courts face in efficiently managing their dockets and the good-faith effort to create clear, consistent procedures. Still, such procedures must align with the constitutional and statutory rights of defendants and the corresponding responsibilities of the State.

## C. Disputed Time Periods in the Rule 4(C) Calculation

[31] Having established the troubling vagaries of the trial court's policy, we turn to the parties' respective Criminal Rule 4(C) claims. The parties disagree about how to categorize three specific periods in this case: (1) February 14 to March 28, 2023 (42 days); (2) September 19 to October 2, 2023 (13 days); and (3) October 2 to October 24, 2023 (22 days). During each of these periods, the State's discovery was outstanding, no trial date had been established, and Heitz declined to request a trial date.

[32] The State contends these purported delays should be attributed to Heitz because she explicitly stated she was not requesting a trial date during these periods. Heitz argues her actions did not extend the Criminal Rule 4(C) deadline because they resulted from the State's failure to provide mandatory discovery, not from any affirmative action on her part. Whether "a particular delay in bringing a defendant to trial violates the speedy trial guarantee largely depends on the specific circumstances of the case." *Payton v. State*, 905 N.E.2d 508, 511 (Ind. Ct. App. 2009) (quotations omitted).

[33] In this case, the Marion County Local Rules required the State to provide discovery by January 9, 2023—20 days after Heitz's initial hearing. Marion LR-49-CR00-107. But by February 14, 2023, the State was already a month tardy in fulfilling its discovery obligations. By September 19, 2023, the State still had not complied, and that failure continued until December 2023—long after the

periods now in dispute. Thus, throughout all three disputed periods, discovery remained outstanding.

[34] As our Supreme Court long ago recognized, the objective of pretrial discovery is to promulgate justice and prevent surprise by allowing adequate defense preparation. *Biggs v. State*, 546 N.E.2d 1271, 1275 (Ind. 1989) (citing *Campbell v. State*, 500 N.E.2d 174, 182 (Ind. 1986)). Rules or orders requiring pretrial discovery are intended to enhance the accuracy and efficiency of the factfinding process by providing the maximum possible information to each party to enable their trial preparation. *Id.* (citing *Wiseheart v. State*, 491 N.E.2d 985, 990 (Ind. 1986) and *Borst v. State*, 459 N.E.2d 751, 752 (Ind. Ct. App. 1984)).

[35] The critical question here is not whether Heitz requested a trial date, but whether her actions or inactions affirmatively extended the one-year period allowed by Criminal Rule 4(C). The defendant has no duty to bring herself to trial and need not object before the year period expires if no trial date is set. *Young v. State*, 765 N.E.2d 673, 679 (Ind. Ct. App. 2002). Therefore, simply not requesting a trial date cannot be construed as constituting an affirmative action that extends Rule 4(C)'s one-year period. And "[t]he direction [in Rule 4] to discharge is mandatory; nothing will prevent the rule's operation save its own exceptions." *See Crosby v. State*, 597 N.E.2d 984, 987 (Ind. Ct. App. 1992) (considering a motion for discharge under Criminal Rule 4(B), which sets a 70-day period for trial once the defendant files a motion under that rule).

[36] After careful review of the record and precedent, we find that both the February 2023 and September-October 2023 delays should not be attributed to Heitz in line with the policy underlying the discovery exception: that "delay" caused by the State's tardy discovery is not chargeable to the defendant for Criminal Rule 4(C) purposes. *See Wellman*, 210 N.E.3d at 816. The purported delays from these disputed periods all stem from the same underlying challenge: Heitz's inability to properly prepare for trial due to the State's ongoing failure to provide discovery.

[37] The dissent mistakenly characterizes the hearing on February 14, 2023, as an instance when Heitz affirmatively "delayed the proceedings" and "was affirmatively requesting no trial date." *Slip Op.*, ¶ ___. While acknowledging the impropriety of the trial court's policy, the dissent nevertheless analyzes the February 14 exchange in isolation, divorced from the context that gives it meaning. The record, viewed holistically, reveals that this exchange was merely one instance in a pattern of proceedings conducted pursuant to the trial court's improper policy.

[38] At nearly every hearing, including the February 14, 2023, proceeding, the trial court pointedly asked defense counsel—and not the State—for the status of the case or whether defense counsel was seeking a trial setting. These questions effectively implemented the court's policy requiring defendants to set their cases for trial. The questions also invited defense counsel's response: that Heitz was not seeking a trial setting. Tr. Vol. II, pp. 45, 49, 52, 55-56, 59, 63-64, 69, 81. By concurring with the majority's critique of the policy while still attributing delay

to Heitz based on an exchange governed by that very policy, the dissent calls the foul without curing the harm.

[39] Furthermore, defense counsel's comments on February 14, 2023, cannot properly be characterized as an affirmative act causing delay. The record makes clear that until the State fulfilled its discovery obligations in December 2023, Heitz consistently raised the issue of outstanding discovery. The State's persistent failure to meet its discovery obligations—spanning nearly 11 months—formed the backdrop for every pretrial hearing, including the February 14 hearing. Some months later, even the trial court recognized that requesting a trial date before discovery completion would be impractical, stating "my belief has always [been], you take [care] of the discovery before you ask for a trial date." *Id.* at 101. This acknowledgment by the trial court demonstrates why defense counsel's statement on February 14 cannot be viewed as an independent act causing delay, but rather as a reasonable response to ongoing discovery issues within the framework of the court's policy.

[40] The dissent also suggests that we are expanding the discovery exception in a way that might "subvert our trial rules." *Slip Op.*, ¶ ___. This analysis, however, artificially separates the discovery exception from the trial court's policy—the very policy the dissent agrees is improper. The discovery exception cannot be analyzed in isolation when it operates within a system that already misallocates the burden of ensuring timely trials. Under the trial court's policy, defendants face an untenable choice: either request a trial date without complete discovery and risk being unprepared or decline to request a trial date and have that

declination counted as defendant-caused delay. *See Wellman*, 210 N.E.3d at 816 (ruling that defendants should not be required to make this choice).

[41] Our ruling does not expand the discovery exception; rather, it prevents the trial court's improper policy from nullifying the discovery exception altogether. The dissent's concern about subverting trial rules overlooks that it was the trial court's policy—not our application of the discovery exception—that undermined Criminal Rule 4(C) by shifting to the defendant the State's burden of bringing a prosecution to trial. Addressing one aspect of this burden-shifting while preserving another would provide no meaningful remedy for this Criminal Rule 4(C) violation. Nor would it deter prosecutors from dragging their feet on discovery matters so long that they do not timely bring criminal prosecutions to trial.

[42] Returning to our Criminal Rule 4(C) calculation, the only delay properly attributable to Heitz is the agreed 29-day period from January 17 to February 14, 2023, when she was in custody in Johnson County. This extended the original deadline from December 17, 2023, to January 15, 2024.

[43] When the trial court scheduled the trial for March 11, 2024—a date outside the one-year Criminal Rule 4(C) deadline—Heitz properly objected. And when the trial court declined to reschedule the trial, Heitz timely moved for dismissal under Criminal Rule 4(C) on February 14, 2024. Given that the one-year period had expired the month before, Heitz was entitled to dismissal and discharge. The trial court erred in denying Heitz's motion to dismiss.

## Conclusion

We recognize the practical challenges faced by all participants in our criminal justice system.[3] But Criminal Rule 4(C) establishes clear requirements that cannot be circumvented by local court policies, no matter how well-intentioned those policies may be. The rule places an affirmative duty on the State to bring defendants to trial within one year, with no corresponding obligation for defendants to facilitate their own prosecution.

In this case, the trial court's policy of attributing delay to defendants who do not request trial dates fundamentally misapplies Criminal Rule 4(C) and improperly shifts the burden from the State to the defendant. Heitz cannot be faulted for declining to request a trial date while awaiting discovery that the State was obligated—but repeatedly failed—to provide. The State's prolonged

---

[3] The challenges facing Indiana prosecutors and trial courts in dispensing timely justice are particularly evident in high-volume jurisdictions like Marion County, which processed approximately 35,000 new criminal filings in 2023 alone. Prosecutors' offices, as well as their public defender counterparts, are often understaffed, underfunded, and tasked with managing overwhelming caseloads. Similarly, trial courts face congested dockets that require difficult resource allocation decisions—a circumstance that likely led to the trial court's practice here. These challenges are not merely administrative inconveniences but genuine obstacles to the administration of justice.

The Indiana Supreme Court's recent amendment to Criminal Rule 4 (effective January 1, 2024) reflects an institutional recognition of the practical challenges that the State faces in collecting evidence and timely providing it to the defense. Criminal Rule 4(D) now requires that when the State requests a 90-day extension to obtain evidence after a defendant seeks dismissal under Criminal Rule 4, the State must demonstrate "a reasonable and diligent effort was made to procure the evidence in a timely manner prior to moving for an extension of time." Crim. R. 4(D)(3). Though inapplicable here because the State never sought such a continuance and had completed discovery before the first trial date was set, the amended rule reflects an effective balancing of defendants' Rule 4(C) rights with the practical realities facing prosecutors. It creates a clear procedure for managing unavoidable delays while still ensuring diligence on the part of the State.

failure to meet its discovery obligations, spanning nearly 11 months and involving eight separate prosecutors, cannot be transformed into "a delay caused by the defendant" under Rule 4(C).

[46] After factoring in the 29-day period when Heitz was in Johnson County custody, the Criminal Rule 4(C) deadline was January 15, 2024. The trial date of March 11, 2024, exceeds this deadline. As "[t]he State bears the burden to prosecute a given case within the bounds of Rule 4(C)" and failed to do so here, we reverse the trial court's denial of Heitz's motion to dismiss and remand with instructions to grant the motion.

[47] Reversed and remanded.


Pyle, J., concurs.
Felix, J., dissents with a separate opinion.


ATTORNEY FOR APPELLANT

Sarah Medlin
Marion County Public Defender Agency
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Tyler Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

**Felix, Judge, dissenting.**

It should be immediately noted that I agree with the majority's disapproval of the trial court's policy of putting the onus on the defendant to request a trial date. Further, I also agree that "[t]he critical question here is . . . whether [Heitz's] actions or inactions affirmatively extended the one-year period allowed by Criminal Rule 4(C)." *Ante* at ¶ 35.

Based on this record, I respectfully dissent from the conclusion that Heitz's actions did not extend the one-year period. Heitz's actions at the February 14 proceeding extended the one-year period, and consequently, the trial court's denial of her motion for discharge should be affirmed for the reasons set forth below. "When a defendant moves for discharge, he bears the burden of showing that he has not been timely brought to trial and that he is not responsible for the delay." *State v. Harper,* 135 N.E.3d 962, 972 (Ind. Ct. App. 2019) (citing *Wood v. State*, 999 N.E.2d 1054, 1060 (Ind. Ct. App. 2013), *trans. denied, cert. denied*). Heitz has failed to do so here.

First, the trial court's policy does not apply to the February 14 appearance. There, the trial court asked Heitz about the status of the case, and Heitz told the trial court, without any prompting from the court, that she wished to delay proceedings. Almost immediately after the case was identified for the record, defense counsel stated, "Not pursuing a trial setting, Judge, just a pretrial in due course." Tr. Vol. II at 30. At the close of the conference, the trial court asked, "[Y]ou're not requesting a trial date, right?" and Heitz confirmed that no trial

was being sought; in other words, as I interpret the request, Heitz was affirmatively requesting no trial date. *Id.* at 45. Notably, in her Appellant's brief, Heitz concedes that, on February 14, she "asked for [an] extension[]," meaning she delayed the proceedings. Appellant's Br. at 16.

[51] Second, the discovery exception should not apply to Heitz's continuance at the February 14 proceeding. The discovery exception applies when "a trial court grants a defendant's motion for continuance because of the State's failure to comply with the defendant's discovery requests." *Carr v. State*, 934 N.E.2d 1096, 1101 (Ind. 2010). The majority posits that the underlying challenge on February 14 was Heitz's "inability to properly prepare for trial due to the State's ongoing failure to provide discovery" and thus, the discovery exception should apply. *Ante* at ¶ 36. But the record suggests otherwise.

[52] As discussed above, on February 14, the parties met for an attorneys' conference in two cause numbers. Heitz attended the conference, and defense counsel stated, "I'm glad she is here because I didn't have contact with her." Tr. Vol. II at 30. Then when asked about the status, the following exchange occurred:

> [DEFENSE COUNSEL]: Not pursuing a trial setting, Judge, just a pretrial in due course. It sounds like the State is considering if there's additional charges to file, so there is discovery outstanding that --
>
> THE COURT: On which of the cases, State?

[DEFENSE COUNSEL]:  It might just be a new --

THE COURT:  Oh, a new one?

[DEFENSE COUNSEL]:  -- but it involves a victim in one cases [sic], so we're not requesting a trial setting.

*Id.*  Initially, the record does not clearly show that defense counsel was referring to the present cause when citing discovery while asking for a continuance.  The parties met for the conference on two cause numbers, and defense counsel could have been referring to discovery in the other cause number or possibly in the new charges which had not yet been filed.  The record does not provide clarity either way.  Assuming counsel was referring to discovery in this cause, Heitz concedes that, on top of her discovery concerns, "other factors were in play."  Appellant's Br. at 16.  Those other factors were defense counsel's lack of contact with Heitz at this point due to her recent detention in another county and the possibility of new charges being filed against her.  Thus, it is clear from the record and Heitz's own argument that the February 14 continuance was not solely due to discovery concerns.

[53]  Because discovery was not the sole reason for the continuance, the discovery exception should be unavailable.  At the February 14 conference, Heitz sought a continuance for multiple reasons, including lack of communication and outstanding discovery.  Considering that defense counsel had not been in contact with Heitz since her detention in another county, it is unlikely that Heitz would have been prepared for trial but for the outstanding discovery.

Further, we have held that continuances based on communication issues alone extend the C.R. 4(C) deadline. *Bik v. State*, 211 N.E.3d 594, 598 (Ind. Ct. App. 2023) (concluding seven continuances for communication issues were not covered by the discovery exception and thus extended the C.R.4(C) deadline). From this record, there is no way to discern the relative weight that was placed on each factor at play, but Heitz has failed to demonstrate that discovery was the only or primary reason that she was unable to prepare for trial and needed a continuance on February 14.

[54] Even if discovery had been the only reason for the continuance at the February 14 appearance, the discovery exception should not apply here. The record does not indicate that, when Heitz asked for a continuance on February 14, the State had failed to comply with discovery requests from Heitz. As the majority notes, the nature of the discovery issues are not present in the record until March 28. *See ante* at ¶ 7. Traditionally, and I believe this is crucially important, we have applied the discovery exception when defendants have identified the specific discovery they are asking the State to provide. *Bik,* 211 N.E.3d at 598 (requesting blood test results); *Wellman v. State*, 210 N.E.3d 811, 817 (Ind. Ct. App. 2023) (requesting blood test results); *Martin v. State*, 984 N.E.2d 1281, 1288–89 (Ind. Ct. App. 2013) (requesting blood test results); *Marshall v. State*, 759 N.E.2d 665, 670–71 (Ind. Ct. App. 2001) (requesting the State's DNA test results). Without the nature of the discovery or the whole scope of the charges

being known on February 14, there was no specific request for Heitz to make.[4] While describing this hearing in her memorandum supporting her motion for discharge, Heitz conceded, "Defense noted discovery was still outstanding but specific discovery outstanding was not discussed." Appellant's App. Vol. II at 115. On appeal, Heitz still does not point to specific requests she made for discovery; rather, she asks us to apply the discovery exception due to "incomplete discovery." Appellant's Br. at 16. Since there is no indication that Heitz made specific requests to the State at this point in the proceedings, the trial court did not grant the February 14 continuance "because of the State's failure to comply with the defendant's discovery requests." *Carr*, 934 N.E.2d at 1101. As a matter of fact, at this February 14 hearing, Heitz's counsel only mentioned the word "discovery" one time—it was a passing comment and is obviously not the primary basis for Heitz's request to not set a trial date.

[55] Lastly, the majority's application of the discovery exception to incomplete discovery presents concerns as it relates to practice in trial courts. Our trial rules require parties to first attempt to resolve discovery disputes without trial court involvement, *see* Ind. Trial Rule 26(F); Ind. Crim. Rule 2.5(A)(2), while

---

[4] Our new Criminal Rules require trial courts to determine whether a delay is attributable to the Defendant. *See* C.R. 4.1(A)(4) (2024) ("When granting or ordering a continuance, the court must designate whether the delay is excluded from the Rule 4 time period due to the act of the defendant, court congestion, or emergency.") The new rule requires that determination to be made upon the happening of the request and not in a holistic way, meaning the trial court makes the determination based on the record before it instead of making the determination months later. Here, defense counsel had not had contact with Heitz until the February pretrial conference; the State was potentially filing new charges against Heitz; and we cannot be certain (until a month later) that the one time the word "discovery" is mentioned at the February hearing had anything to do with the cause number involved in this appeal.

the majority's opinion may motivate defendants to avoid this requirement. Outstanding discovery is distinct from the State's failure to respond to discovery requests, and the majority's extension of the discovery exception to mere "incomplete discovery" will incentivize defendants to involve the trial court in discovery disputes without attempting to informally resolves such disputes. This decision makes the discovery exception the rule instead of an exception. As an exception, it should not be available without the defendant engaging with the State to resolve discovery issues informally and being able to specifically identify the piece or pieces of evidence that are necessary to prepare for trial. The majority's application of the rule will provide a tool for defense counsel to subvert our trial rules and obtain continuances early in the proceedings without extending the C.R.4(C) deadline.

[56] Based on a determination that Heitz delayed the proceedings on February 14, the C.R. 4(C) deadline would have been extended by 42 days, moving the deadline to February 25, 2024. Under this conclusion, the trial court unquestionably set the trial court past the C.R. 4(C) deadline when it scheduled the trial for March 11, 2024. However, Heitz stopped the C.R. 4(C) clock when she filed her motion for discharge on February 14, *Ferman v. State*, 232 N.E.3d 133, 140 (Ind. Ct. App. 2024), and C.R. 4(C) motions for discharge that are filed prematurely are properly denied, *Stephenson v. State*, 742 N.E.2d 463, 487 n.21 (Ind. 2001). In sum, I would conclude that the trial court did not err in denying Heitz's motion for discharge.